(Nos. 15196-15197-15198.—Judgments affirmed.)

THE ANDERSON & LIND MANUFACTURING COMPANY, Appellee, *vs.* THE CARPENTERS' DISTRICT COUNCIL, *et al.* Appellants.

*Opinion filed June 20, 1923.*

1. INJUNCTION—*only issue in contempt proceeding is whether injunction was violated.* If a court has jurisdiction an injunction granted in the exercise of such jurisdiction must be obeyed, and in a proceeding where a labor organization is charged with contempt in violating an injunction which had been issued to restrain it from interfering with a lawful business, the only issue in the contempt proceeding is whether the injunction was violated.

2. SAME—*right of workmen to quit employment does not include right to interfere with another's business.* The right of every man to dispose of his labor according to his own will, to organize for protection, to impose conditions of employment, and to quit work with or without cause, does not include the right to interfere with the legal right of any or every other person to carry on any legitimate business and to make and enforce all lawful contracts in the prosecution of such business; and such unlawful interference is not justified or rendered lawful because the workman may have what may be regarded as a good motive or may benefit by his unlawful action.

3. SAME—*interference with another's business is unlawful although no violence is threatened.* No person has a right to compel others to break off business relations with another person to his injury, and an injunction against a labor organization from unlawfully interfering with the prosecution of a lawful business may be violated without any threat of violence, as coercion is as easily accomplished without such threats as with them, and fear of loss or injury to business unless one submits to demands is as effective as fear of violence to his person.

4. SAME—*what constitutes an illegal boycott.* An illegal boycott is a combination to exercise pressure upon customers, actual or prospective, in order to cause them to withhold or withdraw patronage through fear of loss or damage to themselves if they should deal with the boycotted firm.

APPEALS from the Second Branch Appellate Court for the First District;—heard in that court on appeals from the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

Hope Thompson, for appellants.

A. S. & E. W. Froehlich, for appellee.

Mr. Justice Cartwright delivered the opinion of the court:

Three petitions were presented to the circuit court of Cook county by the appellee, the Anderson & Lind Manufacturing Company, charging the appellants, the Carpenters' District Council, Thomas F. Church and William Brims, with violating an injunction entered by said court on July 14, 1914, in a cause wherein the appellee was complainant and the Carpenters' District Council, Thomas F. Church and others were defendants. The petitions were referred to a master in chancery, who took the evidence and returned the same with a finding that the appellants had violated the injunction. Exceptions of Church and Brims were overruled and they were each fined $500, with costs. Exceptions of the Carpenters' District Council were sustained and it was discharged. Appeals were taken to the Appellate Court for the First District and the appeals were consolidated. That court affirmed the decree against Church and Brims and reversed the decree dismissing the Carpenters' District Council and directed the circuit court to find it guilty of contempt and impose a penalty. Certificates of importance were granted, and the consolidated cause is now before this court on appeal.

The Anderson & Lind Manufacturing Company is, and for many years has been, a corporation owning and operating a large millwork plant in Chicago, manufacturing sash, doors and building materials used in finishing buildings and known as "carpenter trim," and selling the same to builders and contractors in that city. It has always operated what is known as an open shop, employing workmen without regard to whether they belonged to a labor union or not. On December 13, 1912, it filed its bill of complaint

in the circuit court charging the Carpenters' District Council, Thomas F. Church, a business agent of a union, and others,. with unlawful interference with its business for the purpose of compelling it to operate a closed shop, employing only members of a labor union, by causing contractors and owners of property to refuse to contract with it for the furnishing of millwork and building materials and to cause contractors and owners to cancel existing contracts. The bill was answered, and upon evidence taken before a master in chancery it appeared that the defendants had endeavored to induce the complainant to operate a closed shop; that they had succeeded in obtaining such agreements from most of the similar establishments in Chicago; that complainant was one of the few who had refused to make such a contract, and that the defendants had interfered with the business of the complainant as charged in the bill.   A decree was entered perpetually enjoining the Carpenters' District Council, Thomas F. Church and others, and all their agents, employees or representatives, from directly or indirectly threatening, coercing or intimidating ·any person or persons from buying, selling or otherwise dealing in the product of the complainant; from threatening, coercing or intimidating any person or persons from buying, selling or otherwise dealing in the product of the complainant in the furtherance of any conspiracy or boycott against complainant's business or product; from interfering with, hindering, obstructing or stopping, by threats, coercion or intimidation, the work on buildings to which the complainant was furnishing material; from attempting by threats, coercion or intimidation to prevent any person from freely contracting with or entering into the service of the complainant; from organizing and maintaining a boycott against the complainant by threats, coercion or intimidation to induce customers or other persons to abstain from working for or accepting work and material from the complainant; from attempting to prevent by threats of injury, by threats of

calling a strike against said persons, any person from accepting work or purchasing material from or working for the complainant; and from attempting to institute, or from instituting or maintaining, by threats, intimidation or coercion, for the purpose of preventing persons from accepting work or purchasing material from or doing work for the complainant, any strike against such person. Brims was not a party, personally, to the original suit, but he became president of the Carpenters' District Council, and, with knowledge of the injunction and acting for the council, he, together with Church and the council, was charged with a violation of the injunction.

The court is furnished by counsel for the appellants with an able and exhaustive argument covering the entire field of judicial decision concerning the rights of workmen to refuse employment, or, when not bound by contract, to quit work, and the right of any workman to quit the service of another for any reason which may appear sufficient to him, or for no reason. Based on these propositions, the argument is that what one workman may do a number may do; that courts have no power to restrain the exercise of the right; that persons who join a voluntary association accept and voluntarily agree to be bound by the constitution, by-laws and regulations of the association and to submit to its prescribed discipline; that the officers of such an association are the agents of the members, and the acts of such officers within the scope of their authority are the acts of the members themselves; that what the workmen had a right to do the defendants had a right to require them to do in accordance with the rules of the Carpenters' District Council or the organization of which it is a part. If these propositions were applicable to the proceeding for contempt it would be necessary to consider whether the injunction decree was in accordance with the law or was erroneous, but they are of no importance and in no manner affect the question whether there was a violation of the injunction.

If they are to have any influence at all, it can only be in determining whether the court, in granting the injunction, intended to prohibit the acts of the persons charged with the contempt, and that must be determined from the language of the decree.

If a court has jurisdiction an injunction granted in the exercise of such jurisdiction must be obeyed, and in proceedings for contempt the only issue involved is whether the injunction has been violated. (*Tolman* v. *Jones,* 114 Ill. 147; *Leopold* v. *People,* 140 id. 552; *Clark* v. *Burke,* 163 id. 334; *Swedish-American Telephone Co.* v. *Fidelity and Casualty Co.* 208 id. 562; *Franklin Union No. 4* v. *People,* 220 id. 355; *Christian Hospital* v. *People,* 223 id. 244; *Flannery* v. *People,* 225 id. 62; *People* v. *McWeeney,* 259 id. 161; *People* v. *Clark,* 268 id. 156; *Lyon & Healy* v. *Piano Workers' International Union,* 289 id. 176.) It has never been said, and is not now claimed, that the circuit court was without jurisdiction to enter the decree ordering the injunction and prohibiting the acts therein specified, and counsel for the appellants concedes the jurisdiction.

It is alleged that there was error in taking all the evidence before the master relating to the acts of the defendants together at the same time, but there was no error in that, since all the evidence related to the same matter and the same injunction. The facts proved are as follows: In the summer of 1918 William Brims, president of the district council, and one Bromley, went twice to the place of business of the complainant and tried to make an agreement with it to operate a closed shop and employ none but union labor, and told complainant if it would make such an agreement it would be fixed up, and if it did not sign the agreement a contractor could not use its material in buildings in Chicago. Robert A. Pottinger, who had been engaged in the real estate and building business for many years, made a contract with the complainant in the spring of 1919 for millwork for a 36-apartment and store building

at 4032 Irving Park boulevard. On September 28, 1919, the defendant Church, business agent for the union, called at Pottinger's office and left a card, saying that the carpenters had been stopped, on the order of Brims, because Pottinger was using non-union trim, and Church said that it was because they were using Anderson & Lind material. Pottinger agreed with Brims not to use any more of complainant's material if Brims would let the work proceed. The work had been held up for several weeks, and Pottinger wrote the complainant urging it to help him out of the difficulty. He sent a copy of the letter to Brims, who came to see him and accused Pottinger of trying to send him to jail. The next morning Brims instructed the foreman to go ahead with the work and not to tell anyone he had stopped him. Church came to the building a day or two later and blustered and swore about what Brims had done, but the carpenters resumed work and there was no more trouble about that building. Early in 1920 Pottinger commenced the erection of a 44-apartment and five-story building on Irving Park boulevard and four bungalows near by and again contracted with complainant for the millwork. The complainant delivered the frames to the bungalows and the trim to the flat-building. The carpenters had set the basement frames in the bungalows and were preparing to set other frames, when on August 3, 1920, Brims went to the glaziers who were putting in glass in the front of the Irving Park boulevard job and notified the foreman to quit. The glazier foreman refused unless ordered to quit by his own business agent, and Brims said he would get in touch with such agent and see that the men were pulled off inside of an hour. Nothing further was done. Church and Brims went to the Pottinger buildings and ordered the men off the job and took the numbers of their union cards. Pottinger protested, and Brims called him a vile name and said he could consider himself out of business, and Church told Pottinger that the men would never go back to work on

Anderson & Lind material. The union carpenters employed by Pottinger had no grievance of any kind but wanted to work and made no complaint about working on complainant's material and continued to do so until ordered off by Brims and Church. They resumed work on the building at 4032 Irving Park boulevard as soon as the defendants permitted. Whenever a strike against Pottinger was called the carpenters obeyed orders of Brims and Church and stood around without working, awaiting the settlement of the controversy. Pottinger hired other carpenters in 1920, but as soon as new carpenters were employed Church came every morning, about twenty times in all, and ordered them to quit, so that Pottinger was only able to proceed by discarding the materials which he had bought of the complainant and making arrangements with a union mill for the remainder of the millwork. Brims and Church both testified that their action was not directed against the complainant, but it was clearly proved that that was not true, and that the object in calling the strikes was to penalize the complainant for refusing to operate a closed shop and Pottinger for supporting the complainant in such refusal by buying millwork from it.

If the injunction decree is to be interpreted, in view of settled rules of law, on the assumption that there was no intention of the court to disregard such rules, the necessary conclusion is that the acts of the defendants were unlawful and prohibited by the decree. Every man has a right, under the law, to full freedom in the disposal of his labor according to his own will, and the right of workmen to organize for the purpose of promoting their common welfare by lawful means is fully recognized and always maintained by the courts. Workmen have a legal right, when not bound by contract, to quit employment either singly or in a body, with or without cause. Workmen may impose any conditions of their employment which may be deemed beneficial by them and if denied may quit the service, but it does not

follow from the existence of these rights that no one else has a legal right, which may be disregarded and invaded without committing a legal wrong or incurring responsibility. It is an absolute legal right of every person to carry on any legitimate business and to make and enforce all lawful contracts in the prosecution of such business. The complainant had a right to operate its mill and sell its product free from molestation for the purpose of injuring it or coercing it to comply with the demand that it should operate a closed shop. The complainant did not refuse to employ union labor but conducted an open shop and employed workmen regardless of whether they belonged to a labor union or not. Where it is alleged that a legal wrong has been done, the first question to consider is the right of the party who alleges the wrong, and not to begin with the question whether the alleged wrongdoer would be benefited by his act. (*Carlson* v. *Carpenter Contractors' Ass'n of Chicago,* 305 Ill. 331.) If it is found that the right existed, it could only be invaded by one who had an equal or superior right. Any idea that one may deprive another of a right by compelling others to break off business relations with him because it will benefit the person doing the wrong is utterly baseless. In most cases the wrongdoer anticipates some advantage or benefit to himself, and in this case the only benefit claimed was not direct, but the remote one of requiring a manufacturer of millwork to operate a closed shop and employ only union labor. The substantial argument is that the defendants had a right to do anything they saw fit for the purpose of strengthening or protecting the labor union at large, and that the injunction order should be interpreted to mean that while they must not threaten violence to any customer of the complainant they were at liberty to interfere with it or its business by any other means. Coercion is as easily accomplished without threats of violence as with them, and fear of loss or injury to business unless one submits to demands is as effective as fear

of violence to his person. No person has a right to make war on another and to compel others to break off business relations with him to his injury. (*O'Brien* v. *People,* 216 Ill. 354; *Wilson* v. *Hey,* 232 id. 389; *Barnes & Co.* v. *Chicago Typographical Union,* id. 424.) If an evil motive does not make a lawful act unlawful, it is equally true that what may be regarded as a good motive will not make an unlawful act lawful. What the defendants did amounted to an indirect illegal boycott against the complainant, which was defined in *Duplex Printing Press Co.* v. *Deering,* 254 U. S. 443, as a combination to exercise coercive pressure upon customers, actual or prospective, in order to cause them to withhold or withdraw patronage through fear of loss or damage to themselves if they should deal with it. The purpose of the injunction was to put a stop to acts of the district council or its agents in applying pressure to customers of the complainant to induce them not to trade with it or buy its product. The right of the complainant to carry on its business was absolute, and not qualified by any right of the defendants to compel it to operate a closed shop and employ only union labor. The acts of the defendants were prohibited by the injunction and they were guilty of contempt in violating it.

The suggestion that the voluntary organization composing the district council could not be held guilty of contempt was settled when the injunction was granted. If it could be enjoined it could be punished for failure to obey the injunction. The question could not arise in the proceeding for contempt and would have been unavailing if it could have arisen. *Barnes & Co.* v. *Chicago Typographical Union, supra.*

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*