No. 25,997.

CHARLES A. BULL, *Appellee,* v. THE INTERNATIONAL ALLIANCE OF THEATRICAL STAGE EMPLOYEES AND MOVING PICTURE MACHINE OPERATORS OF THE UNITED STATES AND CANADA, LOCAL No. 414; FRANK WELCH, President, and CHARLES PECK, Secretary, et al., *Appellants.*

SYLLABUS BY THE COURT.

1. INJUNCTIONS—*Cases Involving Employment—Application of Statute.* The act forbidding the issuance of restraining orders and injunctions (R. S. 60-1107) applies to controversies arising between employers and employees, between employees, and between persons employed and persons seeking employment, and is not applicable to controversies between an employer and parties not employed or seeking employment.

2. SAME—*Picketing—When Enjoinable.* The picketing of a theater by parties with the intention of reducing and injuring the owner's business by standing near the entrance and announcing to would-be patrons in a loud voice that the owner was unfair to labor, causing crowds to gather there and obstruct the passage, they having previously stated that if the demands of defendants were not complied with the owner would be turned over to the tender mercies of organized labor and unpleasant things would follow, where such interference and obstruction caused a substantial reduction in the owner's business, constitutes a deprivation of property rights and entitles the owner to an injunction.

Appeal from Sedgwick district court, division No. 3; JESSE D. WALL, judge. Opinion filed December 5, 1925. Affirmed.

*A. M. Harvey, Randal C. Harvey,* both of Topeka, *John W. Adams, William J. Wertz* and *George L. Adams,* all of Wichita, for the appellants.

*S. A. Buckland,* of Wichita, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Charles A. Bull brought an action to obtain an injunction against The International Alliance of Theatrical Employees and Moving Picture Machine Operators, Local Union No. 414, Frank Welch, president, and Charles Peck, secretary, of the Local No. 414. In his petition he alleged that he was the owner of two moving-picture theaters in Wichita, which he had been operating for several years with a remunerative patronage, which continued up until the interference of the defendants, and that on September 1, 1923, he was visited by a committee of three claiming to be

1. Injunctions, 32 C. J. § 269; 27 A. L. R. 413; 16 R. C. L. 464.  2. Constitutional Law, 12 C. J. § 998; 6 A. L. R. 928; 16 A. L. R. 233; 16 R. C. L. 455, *et seq.*

authorized by Local 414, who demanded that the operators of the moving pictures be given an increase of thirty-three and one-third per cent in the wages which had been paid on a prior contract that was to expire on the last day of August, 1923. He alleged that he refused to accede to the demands of the committee on account of the small admission charge and that the business would not warrant it, whereupon he was informed that the operators would quit work and plaintiff would be turned over "to the tender mercies of organized labor." At that time the plaintiff had three operators, and pursuant to the directions of the union the operators withdrew from the service and refused to work for plaintiff. Plaintiff then alleges that the defendants and each of them for the purpose of carrying out the threats conspired together to injure and destroy his business by inducing persons and would-be patrons not to patronize the picture houses, and in order to drive him out of business caused agents and employees of the defendants to parade back and forth in front of the plaintiff's places of business and within a few feet of where tickets were sold during all of the business hours, continuously announcing in loud voices to those about to purchase tickets that "The Holland, Novelty and Marple theaters are unfair to all organized labor." It is alleged that the announcement was untrue, that in truth and in fact he had at all times been fair to labor and had theretofore employed organized labor, and that at the time of the interference organized labor was at work in the theaters. The person designated to picket one of his theaters, which he alleged was located at the busiest corner in the city, wore a scarf or sash with the word "Picket" in large letters thereon. That the parade and outcry of the person obstructed the street and prevented and intimidated people who attempted to enter the theaters, by which the business was materially reduced and great damage caused to plaintiff. On this petition a restraining order was issued, and later a motion was made by defendants for a dissolution of the order. A hearing was had upon this motion and testimony which tended to substantially support the averments of the plaintiff was produced. It tended to show that a committee of three from the union presented a contract for the plaintiff to sign giving the operators a substantial increase in wages, with a reduction of the working hours. The increase demanded, it was shown, would amount to about $1,200 a year at each theater.

The alliance is an organization which instructs and trains operators of moving-picture machines and furnishes to picture houses those that are trained and have shown by an examination that they are fitted to work as operators. This organization is affiliated with the labor organizations of the country.

A witness from this organization stated that the kind of service that operators were required to render was expert and was also quite hazardous, that none of the men are recommended by the defendants to theaters except those that have been qualified, and that statistics show that the operators' lives are shortened to quite an extent because of the confinement in the booth where they work and the gases which accumulate there. The secretary of the union testified that the work was very detrimental to health, and that the wages that had been paid were not compensatory for the kind of work done by the operators. It was admitted that a committee of the defendants arranged for placing the picket at plaintiff's place of business.

In respect to the picketing the testimony was that one person paraded before each theater during business hours, that he walked back and forth on the sidewalk about ten feet from the box where tickets were sold, and whenever a customer came to buy a ticket he would "hello" and say that the theater was unfair to organized labor. Would-be patrons would stop and listen to the announcement, and others, who wondered what it was, would stop also and thus block the sidewalk. Many people who approached to purchase tickets when accosted by the picket would turn away and would not enter the theater. It does not appear that the persons engaged in picketing at the theaters used any violence or any threats, the picketing being confined to the marching back and forth with the announcement that the place was unfair to all organized labor. When persons approached to buy tickets the picket hallooed to them with the result the would-be patrons turned away and went elsewhere. The court found that defendants unlawfully conspired together to wrongfully obstruct plaintiff in carrying on his business with the purpose of coercing him to enter into a contractual relation with defendants, and in furtherance of the conspiracy had employed pickets who were stationed before plaintiff's premises, and they sought to turn away would-be patrons seeking to enter his theaters, and that the picketing as carried on constituted a nuisance to the plaintiff and the public.

There was a finding, too, that the defendants were unable to respond to plaintiff in the damages sustained, and that the plaintiff has no adequate remedy at law. A judgment of injunction was entered from which defendants appeal.

No question is raised about the participation of the defendants in the interference with and obstruction of plaintiff's business nor that the action did not substantially injure plaintiff's business and property rights.

It is contended by defendants that the interference was mere peaceful picketing, which could not be deemed unlawful, at least that it did not constitute such a wrong as can be enjoined. The interference shown by the evidence constituted a real injury to the plaintiff's property rights and one which ordinarily affords grounds for injunction.

It is first contended that the granting of the injunction was a violation of the provisions of R. S. 60-1107. That statute provides that no injunction shall be granted in any case:

"Between an employer and employee, or between employees, or between persons employed and persons seeking employment, . . . unless necessary to prevent irreparable injury to property or to a property right of the party making the application, for which injury there is no adequate remedy at law."

Further along in the act it provides:

"And no such restraining order or injunction shall prohibit any person or persons from terminating any relation of employment, or from ceasing to perform any work or labor, or from recommending, advising, or persuading others by peaceful means to do so; or from attending at or near a house or place where any person resides or works, or carries on business, or happens to be for the purpose of peacefully obtaining or communicating information, or of peacefully persuading any person to work or to abstain from working; or from ceasing to patronize or to employ any party to such dispute; or from recommending, advising, or persuading others by peaceful means to do so; or from paying or giving to or withholding from any person engaged in such dispute any strike benefits or other moneys or things of value; or from peaceably assembling at any place in a lawful manner and for lawful purposes; or from doing any act or thing which might lawfully be done in the absence of such dispute by any party thereto."

This statute has been regarded as applying only to cases between the parties specifically named, that is between employers and employees, between employees, and between persons employed and persons seeking employment. The defendants in this case do not fall within any of the classes stated. The action was between one own-

ing and operating a theater and certain labor organizations. The defendants were not employed by plaintiff or seeking to be employed, but were outsiders seeking to compel plaintiff to pay higher wages to those he had employed or might employ, and therefore defendants cannot be considered as coming within the provisions of the statute. After providing for the cases in which injunctions shall not be granted and enumerating a number of specific acts and things which shall not be enjoined, the legislature refers back to the cases first mentioned, and the disputes to which the act was meant to apply. It confines the later prohibitions to "*such* restraining order or injunction" and to persons "engaged in *such* disputes." The obvious intent of the legislature was that the act should only apply to cases and disputes between employers and employees, between employees, and between those employed and those seeking employment. (*Crane & Co. v. Snowden,* 112 Kan. 217, 210 Pac. 475; *Canoe Creek Coal Co. v. Christinson,* 281 Fed. 559.)

As will be observed the act itself expressly excepts from the prohibition injunctions to prevent irreparable injury to property or to a property right for which there is no adequate remedy at law. The trial court, as we have seen, has found the nature of the injury and that the defendants are unable to respond to plaintiff in damages, and also that the plaintiff has no adequate remedy at law. It follows that the case does not come within the prohibition even if the act were construed to apply to disputes between others than employers and employees.

Again, if it were given the broad application contended for prohibiting injunctions in cases like the one under consideration, where defendants conspired to and did injure plaintiff's business and property rights, to the extent that their acts constituted a nuisance to the plaintiff and the public, it would fall within the rule of *Truax v. Corrigan,* 257 U. S. 312, holding that an act which would make lawful an interference with an owner's business and deprive him of property rights, would not be due process or equal protection of the law, and would be a violation of the fourteenth amendment of the federal constitution. That case involved a statute of Arizona containing provisions similar to those in the Kansas act forbidding the granting of injunctions in labor controversies, and the supreme court of that state had held the statute to be valid. It appears that a dispute had arisen as to terms and conditions of employment between the owner of a restaurant and his employees, and the owner refused to accede

to the demands of the union of the employees. The refusal was followed by a strike and an interference with the owner's business. The defendants conspired together to coerce the plaintiff by picketing his place of business, displaying banners, advertising that he was unfair to the union, and by efforts to induce customers to cease patronizing plaintiff's restaurant, and they also circulated handbills containing abusive charges against him. The consequence of their action was that plaintiff's daily receipts were reduced from $156 a day to $75 a day. In his application for injunction he alleged that if the defendants' acts were not enjoined he would suffer great and irreparable injury, and if continued would entirely destroy his business; and further, that the defendants were unable to respond in damages for the injury inflicted, and that plaintiff was without an adequate remedy at law. It was held that the acts of the defendants, which differed only in degree from the acts of the defendants in the present case, were unlawful, and that to inflict injury with the purpose of depriving plaintiff of his business, warranted the granting of equitable relief. It was said:

"To give operation to a statute whereby serious losses inflicted by such unlawful means are in effect made remediless, is, we think, to disregard fundamental rights of liberty and property and to deprive the person suffering the loss of due process of law." (p. 330.)

It was pointed out in the decision that under the equality clause of the constitution, an act granting equitable relief to one and withholding it from another under like circumstances was necessarily invalid. So, if it were assumed that our act covered cases like the present one, granting privileges and immunities to one and denying them to another, it would be a denial of equal protection of the laws and in conflict with the fourteenth amendment of the federal constitution. However, we are inclined to the opinion that this controversy is not within the purview of the act in question, and that the injunction was sought and granted on the general principles of equity. Plaintiff was engaged in conducting a lawful business with a view of obtaining pecuniary benefits from it. The right to carry on such a business for profit is property, and an interference with that right which resulted in depriving the plaintiff of patronage and business profits, entitled him to equitable relief. The conspiracy entered into by defendants with the intention to inflict injury on plaintiff's business was a tort, and their wrongdoing occasioned a substantial loss to plaintiff. Aside from the conspiracy the means

used were unlawful, and the picketing done carried the implication of a threat, as defendants told plaintiff if he did not submit to their demands he would "be turned over to the tender mercies of organized labor, . . . and a lot of unpleasant things follow."

We conclude that plaintiff was entitled to an injunction, and the judgment is therefore affirmed.

HARVEY, J., not sitting.