LYLE *v.* LOCAL No. 452, AMALGAMATED MEAT CUTTERS AND
BUTCHERS WORKMEN OF NORTH AMERICA *et al.*

(*Nashville,* December Term, 1938.)

Opinion filed Feb. 18, 1939.

JOSEPH H. NORVILLE and SAM D. RHEM, JR., both of Memphis, for appellant.

GALLOWAY & GALLOWAY, of Memphis, for appellees.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

The Court of Appeals, in its opinion transferring the cause to this court because of the constitutional questions involved, made a very clear statement of the controversy, which we adopt since it is not questioned by either party, and which is as follows:

"The complainant, Lyle, the owner and operator of a retail grocery and meat market in the City of Memphis, filed this bill against the defendant organization which, as the name implies, is the local union or branch of the retail butchers union. The president and business manager of the organization were also named as defendants in their official capacities.

"The bill charged in substance that the complainant was not operating a union shop and did not desire to do so; that his business was a small one built up by his own

efforts and was conducted by himself, his wife, and one grocery clerk; that the complainant employed no butcher at the time the bill was filed, but cut his own meats; that the defendants had sought to prevail upon him to sign a contract with the union, agreeing to operate a union butcher shop, opening and closing his business at certain specified hours and paying the union wage; that his business was a small one and that he could not comply with the terms of such a contract and stay in business, for the reason that the amount of business done by him did not justify him in paying the wages demanded and he could not meet competition in the neighborhood by opening and closing his business at the hours specified.

"It was further averred that upon his refusal to sign this contract the defendants had picketed his place of business by placing a man in front of his store, who walked up and down continuously during business hours, carrying an umbrella on which was prominently displayed the words 'Unfair to Butchers Union, Local No. 452' and that the defendant threatened to keep said picket there unless and until the complainant signed the contract with the union.

"It was further averred that in addition to this the defendants had caused to be printed and circulated in the neighborhood from which the complainant drew most of his business, circulars which recited in substance that the complainant was unfair to organized labor and that trade and patronage should be withheld from him; that said circulars were defamatory in that they contained directly and by innuendo, untrue derogatory statements as to the kind, character, and quality of the complainant's meat department.

"It was further averred that the acts of the defend-

ants were done with the intent and purpose of intimidating and diverting the complainant's customers and their patronage from his store and causing others to boycott the complainant, and to cause third persons having no interest in the dispute to withdraw and withhold their patronage from the complainant, and that said acts and conduct on the part of the defendants had accomplished said purposes.

"It was further averred that these acts constituted a veiled threat and intimidation to complainant's patrons and to the effect that the union would retaliate or injure them in the event they did not withdraw their patronage and trade from the complainant.

"It was further averred that the complainant had a right to conduct his own business and work in his own store as a butcher without interference by the defendants, and that the aforementioned acts constituted an unwarranted and unjust invasion of his rights as a citizen to conduct his business as he might see fit, subject to the general law of the land, and was an effort to deprive him of his property without due process of law.

"The bill prayed 'That an injunction issue restraining the defendants, their agents and servants from using complainant's sidewalk in front of his premises for picketing purposes; that the defendants, their agents and servants be enjoined from picketing complainant's place of business and from displaying signs or banners, carrying the words "Unfair to Butchers Union, Local No. 452," or words of like effect; that they be further enjoined from printing, publishing and distributing, or causing the same to be done, circulars to the effect that complainant is unfair to organized labor and be enjoined from securing or attempting to coerce members of the

general public not to trade from or with the complainant at his said place of business, 1389 Poplar Avenue; that upon the hearing, the said injunction be made perpetual and complainant have such other and further relief as will to the court seem meet and just.'

"The defendants filed a joint answer. They admitted that upon the complainant's refusal to sign a contract with the union that they had placed a picket in front of his place· of business carrying an umbrella bearing the inscription referred to, and further that they had caused to be distributed certain circulars relative to the controversy with the complainant and his failure to sign the contract. They denied that there was anything untrue or derogatory to complainant or his business, either in the inscription on the umbrella or in the circulars.

"They averred that their acts and conduct in the particulars mentioned were done in· the exercise of their constitutional right of free speech and denied that they were guilty of any unlawful conduct.

"After a hearing upon the evidence the chancellor denied the relief sought and the complainant appealed.

"One of the circulars admittedly distributed by the defendants reads in part as follows:

" 'Consider these facts: In these times of economic stress, everyone must work together. No one has a right to destroy the economic stability of our city or nation. This Mr. Lyle attempts to do. While other butchers' shops are working reasonable hours and paying fair pay, Mr. Lyle wants to work long hours and pay low pay, thereby making it difficult for competitors to meet his tactics.

" 'He has consistently shown himself opposed to the working man's rights. He has declined to co-operate

with those who are trying to improve working conditions. He denies to his employees the rights to which they are entitled.

" 'If you believe in working men long hours at low pay with unjust working conditions and thereby destroy the orderly economic progress, you will patronize Lyle's Grocery. If you stand for hours and working conditions that will encourage better living conditions and give the workers an opportunity to educate their children and live in decency, then you will not patronize Lyle's Grocery until he agrees to abide by the working conditions observed by legitimate business institutions.

" 'By agreeing to decent working conditions Mr. Lyle can settle his differences with the Butchers' Local Union No. 452 and continue to do any work in his own store that he desires and earn the fruits of his own labor.'

"It also appears that there was a newspaper story published in the Memphis Labor Review, a newspaper published in Memphis purporting to be the official newspaper of organized labor, which reads in part as follows:

" 'He denies to his employees the rights to which they are entitled.

" 'And the Butchers' Union is seeking to gain those rights for Lyle's Store employees. They are seeking to have the store owner compete with other stores on a fair and just basis.

" 'Patrons who go to the WeOna Store should be aware of this—should know that they are assisting a man who is not fair to working people, who does not operate his business on a just basis.'

" 'Friends of labor are boycotting Lyle's WeOna store. He is unfair.'

"The defendants admitted that they gave out the facts concerning the controversy to the newspaper, but averred that they were not responsible for any conclusions of the writer of the story."

It should be further stated that the chancellor declined to grant a temporary injunction, and, during the intervening two months between the filing of the bill and the hearing of the case, the business of complainant fell off one third as a result of the picketing of his place of business by the defendants.

The court is not concerned as to the wisdom or policy of this character of litigation; that being a question for the lawmaking body of the State. The duty of the court is simply to declare the law as it exists and not as it should be.

Perhaps there is no subject about which more has been written by the courts than that of the rights, privileges, and immunities of organized labor. The subject of injunctive relief against boycotts and picketing is regulated in many States by statute. In this State there is no statute dealing with this matter, and this court has not heretofore been called upon to decide a controversy of this nature.

In this particular cause the issue is a very simple one. The defendants do not object to complainant cutting his own meats provided he becomes a member of the Butchers' Union, and because of his refusal to adopt the so-called "closed shop" agreement defendants began picketing his business for the purpose of coercing him to join the union, or, upon his continued refusal, to injure or destroy his business. Upon this particular question we find the authorities practically harmonious, the modern decisions being that the end sought by the pick-

eting in these circumstances is unlawful. *Hotel, Restaurant, etc., Local Union No. 181* v. *Miller* (1938), 272 Ky., 466, 471, 114 S. W. (2d), 501; *Swing et al.* v. *American Federation of Labor et al.*, 298 Ill. App., 63, 18 N. E. (2d), 258, decided December 21, 1938; *Canter Sample Furniture House, Inc.*, v. *Retail Furniture Employees Local No. 109 et al.* (1937), 122 N. J. Eq., 575, 196 A., 210; *Culinary Workers' Union No. 331* v. *Fuller* (Tex. Civ. App., 1937), 105 S. W. (2d), 295; *Keith Theatre, Inc.*, v. *Vachon* (1936), 134 Me., 392, 187 A., 692; *Safeway Stores, Inc.*, v. *Retail Clerk's Union* (1935), 184 Wash., 322, 51 P. (2d), 372; *Driggs Dairy Farms, Inc.*, v. *Milk Drivers, etc., Union No. 361* (1935), 49 Ohio App., 303, 197 N. E., 250; *Elkind & Sons* v. *Retail Clerks' I. P. Ass'n* (1933), 114 N. J. Eq., 586, 169 A., 494; *Moreland Theatres Corp.* v. *Portland Moving Picture M. O. P. Union* (1932), 140 Or., 35, 12 P. (2d), 333; *Armstrong Cork & Insulation Co.* v. *Walsh* (1931), 276 Mass., 263, 177 N. E., 2; *Bomes* v. *Providence Local M. P. M. O.* (1931), 51 R. I., 499, 155 A., 581; *Stearns Lumber Co.* v. *Howlett* (1927), 260 Mass., 45, 157 N. E., 82, 52 A. L. R., 1125; *Bull* v. *International Alliance, etc.* (1925), 119 Kan., 713, 717, 241 P., 459; *Anderson & Lind Mfg. Co.* v. *Carpenters' Dist. Council* (1923), 308 Ill., 488, 139 N. E., 887; *Auburn Draying Co.* v. *Wardell* (1919), 227 N. Y., 1, 124 N. E., 97, 6 A. L. R., 901; *Local Union No. 313* v. *Stathakis*, 135 Ark., 86, 205 S. W., 450, 6 A. L. R., 894; *Hitchman Coal & C. Co.* v. *Mitchell* (1917), 245 U. S., 229, 38 S. Ct., 65, 62 L. Ed., 260, L. R. A., 1918C, 497, Ann. Cas., 1918B, 461.

Most of these decisions are based upon the principle that the right to conduct a lawful business is a property right, protected by the common law and guaranteed by the

organic law of the State; and that when necessary to prevent irreparable injury an injunction will be granted to prevent third persons, who are not employees and have no contractual relations with the employer, from injuring or destroying his business by so-called peaceful picketing. Some of the cases are rested upon the theory that such picketing amounts to a nuisance, and as such will be enjoined.

■ The general rule, supported by many decisions, both State and Federal, is stated in 32 C. J., 155, as follows:

"Since the right to carry on a lawful business without obstruction is a property right, acts committed without just cause or excuse, which interfere with the carrying on of complainant's business and destroy his custom, his credit, or his profits, do an irreparable injury and authorize the issuance of an injunction."

■ Upon another ground we think complainant is entitled to an injunction, and that is the unlawfulness of picketing a business where the owner is the sole person required to run his business. *Goldfinger* v. *Feintuch* (1937), 276 N. Y., 281, 11 N. E. (2d), 910, 116 A. L. R., 477; *Thompson* v. *Boekhout*, 273 N. Y., 390, 7 N. E. (2d), 674; *Luft* v. *Flove*, 270 N. Y., 640, 1 N. E. (2d), 369. In this particular cause complainant alone was conducting his meat market when defendants began picketing his place of business because he would not join the Butchers' Union. This does not constitute a labor dispute. *Thompson* v. *Boekhout, supra.*

We conclude therefore that complainant, as a result of the conduct of defendants, was deprived of his liberty and property, as guaranteed to him by the 5th and 14th amendments to the Federal Constitution, and Article 1,

section 8, of the Constitution of Tennessee. It results that the decree of the chancellor will be reversed and a permanent injunction issued as prayed for in the original bill.