Rowe Transfer & Storage Co. *v.* International Brother-
hood of Teamsters, Chauffeurs, Warehousemen
and Helpers, Local Union No. 621, A. F. L.

(*Knoxville*, September Term, 1947.)

Opinion filed February 28, 1948.

W. O. LOWE and THOMAS W. THOMSON, both of Knoxville, for appellants.

GRIMM & TAPP, of Knoxville, for appellee.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

A majority of the twenty odd eligible for labor union membership employees of Rowe Transfer and Storage Company made a written designation of the labor union mentioned in the caption of this memorandum opinion as their bargaining representative, the purpose being to secure higher wages. They are not members of that union. No labor dispute had arisen between these em-

ployees and their said employer, unless it may be said that the refusal of the employer to deal with this union in the aforementioned matter constituted a labor dispute. No question of interstate commerce was involved.

As a result of the refusal of the employer to deal with this union and, also, in an effort to induce employees of this business to join this union, a picketing of the plant of this employer commenced on or about June 3, 1946. This picketing was in charge of this union and was participated in by some who were not employees of Rowe Transfer and Storage Company and some who were. The pickets carried cards charging that this employer, Rowe Transfer and Storage Company, was unfair to labor. The company did not discriminate between union and non-union members in its hiring of employees.

There is no proof of violence or threat of violence in connection with the actual picketing of this employer's place of business. However, some of the employees while on duty, but away from the place of business, were threatened with violence by persons who either were members of this union or interested in the success of its efforts within the premises. These threats of violence were of such a nature as to intimidate some of the employees and to cause the employer to think it necessary to sometimes have employees accompanied by guards to their homes after work.

Pursuant to the prayer of the Chancery Court bill filed by employer on June 6, 1946, the Chancellor at that time granted a preliminary injunction restraining this union and its representatives and the individuals therein from directly or indirectly interfering with the employer in the carrying on of its business, and from going about

its premises and from interfering with or in any way molesting, threatening or intimidating its employees.

A jury trial was had on January 10, 1947 and a verdict finding the facts as alleged in the bill was returned. The Chancellor thereupon entered a decree making the preliminary injunction permanent. The result of this decree was to enjoin the union from a peaceful picketing of employer's plant. The union appealed, its principal insistence, in so far as pertinent to the question presented by this petition for *certiorari*, being that the Chancellor should have at least so modified his decree as to permit the peaceful picketing, and that the decree forbidding such peaceful picketing did in fact violate the right of free speech guaranteed to these appellants by the Fourteenth Amendment to the Federal Constitution.

The Court of Appeals in what we consider a very scholarly and comprehensive opinion modified the injunction so as "to permit peaceful picketing conducted in a manner not to intimidate, threaten or molest complainant's employees and with such restriction as to numbers as may be found necessary". The errors assigned by Rowe Transfer and Storage Company in its petition for *certiorari* are all in substance directed to the action of the Court of Appeals in so modifying the injunction.

When our case of *Lyle* v. *Meat Cutters and Butchers*, 174 Tenn. 222, 124 S. W. (2d) 701, 704, is given that construction most liberal to employer its holding is (1) "when necessary to prevent irreparable injury an injunction will be granted to prevent third persons, who are not employees and have no contractual relations with the employer, from injuring or destroying his business by so-called peaceful picketing. Some of the cases are rested upon the theory that such picketing amounts to a

nuisance, and as such will be enjoined''. (2) Picketing of one's place of business is unlawful in the absence of a labor dispute.

██ ██ In the case at bar we are not justified in concluding that peaceful picketing of petitioner's place of business will result in irreparable injury to its business. Furthermore, if the union, in peaceful picketing, is in the exercise of its legal right and exercising that right in a legal manner, then it cannot be enjoined from such exercise of such right even though in so doing injury results to the employer. This is as true as the fact that this employer under the facts of this case has the legal right to refuse to deal with this union and cannot be enjoined from the exercise of that right though its doing so results in damage to the union. So, an important question here is whether peaceful picketing in the absence of a labor dispute is now lawful.

*Lyle* v. *Meat Cutters and Butchers, supra,* was decided in 1939. Thereafter, in 1941, the United States Supreme Court in the case of *American Federation of Labor* v. *Swing,* 312 U. S. 321, 61 S. Ct. 568, 85 L. Ed. 855 held that peaceful picketing is included in and a part of that freedom of speech guaranteed by the Fourteenth Amendment to the United States Constitution; that, therefore, an injunction against such peaceful picketing either pursuant to the common law or statutory policy of a state violated this provision of the Federal Constitution.

██ The decision of the Supreme Court of the United States as to whether a certain act, decree or law violates the Constitution of the United States is binding upon the state courts. We, therefore, must conclude that an injunction against peaceful picketing, nothing else appearing, is a violation of the Fourteenth Amendment of the

United States Constitution and that *Lyle* v. *Meat Cutters and Butchers, supra,* in so far as it may by necessary implication hold to the contrary, is no longer the law by reason of the subsequent decisions of the Supreme Court of the United States.

In the case of *Milk Wagon Drivers Union* v. *Meadowmoor Dairies*, 312 U. S. 287, 61 S. Ct. 552, 555, 85 L. Ed. 836, 132 A. L. R. 1200, the United States Supreme Court after observing that "peaceful picketing is the workingman's means of communication" said with reference to the case which it had under consideration that "the picketing in this case was set in a back ground of violence" and that "utterance in a context of violence can lose its significance as an appeal to reason and become part of an instrument of force. Such utterance was not meant to be sheltered by the Constitution". So it was held that the permanent blanket injunction against picketing was proper in that case. That is, as we understand it, the previous picketing was so weaved with violence as that any further picketing at the time and place implied, *ipso facto,* an intimidating and coercing threat to employ violence to accomplish the end sought.

In the *Meadowmoor Dairies Case, supra,* the Court was careful to limit the application of its holding in that case to its particular facts by these statements, to-wit:—(1) "The right of free speech cannot be denied by drawing from a trivial rough incident or a moment of animal exuberance the conclusion that otherwise peaceful picketing has the taint of force;" and (2) "Right to free speech in the future cannot be forfeited because of dissociated facts of past violence"; and (3) "Inasmuch as the injunction was based on findings made in 1937, this decision is no bar to resort to the state court for a modification

of the terms of the injunction should that court find that the passage of time has deprived the picketing of its coercive influence. In the exceptional cases warranting restraint upon normally free conduct, the restraint ought to be defined by clear and guarded language.''

Perhaps the entire result of the *Meadowmoor Dairies Case* is correctly stated in the text of 132 A. L. R., page 1221 as follows:—''The reason most frequently advanced by the courts in justification of the blanket injunction against all picketing, where there has been past violence or other unlawful conduct, is that an injunction of such breadth is necessary to prevent future excesses and coercion, which, in the light of the past conduct, may reasonably be anticipated.'' Numerous cases are cited in support of this text.

In the case at bar the threats of violence were not enmeshed in the picketing, as were the acts of violence in the *Meadowmoor Dairies Case*. Probably it is correct to say that they were, for the most part, disassociated acts of violence. It is also of importance that the temporary injunction in the instant case issued on June 6, 1946, and that a hearing was not had until January 10, 1947 and decree not entered until February 12, 1947. There is no evidence of any violation of the preliminary injunction at any time during this interval.

██ We are not, therefore, justified in concluding in the case at bar that the decree of the Court permitting peaceful picketing and enjoining threats or acts of violence would not be entirely respected. The conduct of these respondents, on the other hand, since the granting of the preliminary injunction, justify the conclusion that the decree of the Court permitting peaceful picketing and restraining anything beyond that would

be obeyed in all respects. As a matter of fact the case can be retained in Court for the purpose (upon proper application) of stopping any abuses done in connection with or in the name of peaceful picketing. Further, when the acts of violence are remote in point of time, as in the instant case, the tendency of the courts has been not to declare a blanket injunction against all picketing. Cases to that effect will be found annotated in 132 A. L. R., commencing page 1224. This practice is probably grounded upon the fundamental truth that the exercise of rights guaranteed by the organic law shall not be enjoined when it is not fairly clear that such rights are sought to be exercised for an illegal purpose.

■ We think these facts bring the instant case within one or more of those situations in the *Meadowmoor Dairies Case* in which the Court said that the blanket injunction against all picketing should not issue, and are, therefore, of the opinion that the Court of Appeals was correct in its modification of the decree of the Chancellor.

All assignments of error are overruled, and the petition denied.

All concur.