JAMES M. PRUITT, d/b/a PRUITT'S SUPER MARKET,

Complainant, Appellee,

*v.*

JOHN LAMBERT et al., Defendants, Appellants.

(*Nashville,* December Term, 1956)

Opinion filed February 8, 1957.

TAYLOR, COSTEN & TAYLOR, Memphis, for plaintiff.

292

R. A. TILLMAN, Memphis, for defendants.

MR. JUSTICE SWEPSTON delivered the opinion of the Court.

This cause was heard by stipulation on bill and answer and comes to us on a direct appeal. The question involved is whether the Chancellor properly enjoined the Meat Cutters and Butchers' Unions, A.F.L., C.I.O., from picketing the complainant's place of business.

It is agreed by respective counsel that the operation of his store is purely intra-state and does not affect inter-state commerce in any way. It necessarily follows that Federal Labor Relations statutes have no application either with regard to the rights or responsibilities of the parties or with reference to the jurisdiction of the National Labor Relations Board.

The bill alleges and it is admitted in the answer that there is no dispute between the complainant and his employees and none of complainant's employees belong to either of the defendant Labor Unions. That the representative of said Unions visited the place of business of the complainant on March 22, 1956, and requested that the complainant sign a contract which, among other things, appointed said Unions as the sole bargaining agent of its employees and informed complainant that

upon his refusal to sign said contract they would begin picketing his store immediately. That complainant refused to sign same and within a few minutes pickets were placed in front of the complainant's store, carrying placards which read, "This store does not employ Union members in its meat market." "Neither does it observe hours, wages or working conditions prevailing in Union Markets." "Please patronize stores where Union market cards are displayed." (Signed) "Butchers' Union Local No. 452." An admittedly correct copy of said contract was exhibited to the bill and the same will be referred to more in detail hereinafter.

The answer of defendants after denying the charge that said conduct was illegal and coercive as alleged in the bill, averred that defendants have never insisted that complainant discharge any of its present employees or insisted upon any of said employees joining the defendant Union or Unions.

The Chancellor entered an order enjoining the picketing from which the defendants have appealed.

There is exhibited to the bill an affidavit signed by five men in which they say they are the employees of the complainant's store, that they are satisfied with the working conditions existing at the place of employment, that they have not authorized said Unions to represent them as their bargaining agent and do not desire them to do so. The answer does not deny these statements of this affidavit.

The contract attached to the bill contains in part, the following statement:

"The employer recognizes the Union as the sole and exclusive collective bargaining agent for its meat cut-

ters, apprentices and wrappers, regarding wages and working conditions.

"The employer shall employ a head meat cutter and he shall be a Journeyman meat cutter, recognized and qualified as such by Local No. 452. * * *"

Immediately following the above statement is the provision that said head meat cutter is to provide a certain wage which is higher than that of any other Journeyman meat cutters.

Another provision is:

"There shall be a Journeyman meat cutter on duty at all times when meats are sold from the counter, self-service or freezer cases, and he shall be a member in good standing with Local No. 452.

"Union market cards shall be displayed in all places where only members of the Union are employed and must hang in a conspicuous place. The card may be removed at any time by an officer of the Union when this condition does not prevail.

"The employer agrees to notify the Union when vacancies occur, and to make no agreement with its present or future employees which conflict with this agreement. The employer agrees not to bargain collectively with any other labor organization during the life of this contract.

"The employer agrees to assist the business agent to see that all of his employees remain in good standing with the Union at all times concerning the payment of Union dues during the life of this contract.

"If any owner or employer hereunder sells, leases or transfers his business or any part thereof, the suc-

cessor, lessee or transferee shall be bound fully by the terms of this agreement, and shall be obligated to pay the wages and salaries in effect at the time of the sale, lease or transfer and shall assume all obligations of this agreement in the place and stead of the employer's signature hereto.''

█ It seems obvious that this contract is contrary to public policy of this State in more than one respect. First, it undertakes to bind the employer to recognize the Union as the sole and exclusive bargaining agent for the employees who do not belong to this or any Union and who are given no voice in the selection of the bargaining agent. We have no State statute providing for the appointment of bargaining agents and even under the Federal statutes every employee has a right to vote on the question and the selection is made by a majority of those votes. Secondly, the provision that the head meat cutter shall be one recognized and qualified by the Union places it within the power of the Union to decline with or without reason to recognize any of the present employees as qualified, so that the effect would be to require the employer to hire a Union head meat cutter. Also, the provision that there shall be a Journeyman meat cutter on duty at all times, etc., who shall be a member in good standing with the Union has a similar adverse effect upon the non-union employees because where there is no necessity for more than one Journeyman meat cutter to be on duty, that one would necessarily have to be a member of the Union to the exclusion of the non-union. Both of these provisions violate the spirit, if not the letter, of their right to work statute. T.C.A. sec. 50-208 et seq.

Then again, even if the employer had signed this contract, he would not have been entitled to display the Union card and would have been confronted still with the probability of being picketed for being a non-Union shop. Again, it is difficult to see how the employer could assist the business agent of the Union to see that all of his employees remain in good standing without forcing the non-Union employees either to join the Union and pay dues or to be discharged for failure to do so.

In short, this type of picketing which is denominated "stranger picketing" was not merely for the purpose of advertising but was coercive with illegal objectives.

It would seem to fall within the language of *Building Service Emp. Intern. Union v. Gazzam,* 339 U.S. 532, 533, 70 S.Ct. 784, 788, 94 L.Ed. 1045, wherein the Court said:

"Petitioners insist that the Swing case (*A.F. of L. v. Swing,* 312 U.S. 321, 61 S.C. 568, 85 L.Ed. 855), is controlling. We think not. In that case this Court struck down the State's restraint of picketing based solely on the absence of an employer-employee relationship. An adequate basis for the instant decree is the unlawful objective of the picketing, namely, coercion by the employer of the employees' selection of a bargaining representative. Peaceful picketing for any lawful purpose is not prohibited by the decree under review. The State has not here, as in Swing, relied on the absence of an employer-employee relationship. Thus the State has not, as was the case there, excluded 'workingmen from peacefully exercising the right of free communication by drawing the circle of economic competition between employers and workers so small as to contain only an employer and those directly em-

ployed by him.' 312 U.S. at page, 326, 61 S.Ct. at page 570, 85 L.Ed 855."

■ It is agreed by respective counsel that subsequent to the well-known cases of *Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093, and the Swing case, *supra,* the Supreme Court has clarified its position with respect to the right of labor unions to picket. *International Brotherhood of Teamsters v. Hanke,* 339 U.S. 470, 70 S.Ct. 773, 94 L.Ed. 995. It is established that the right is not unqualified and may be forfeited (1) where picketing is accompanied by violence under such circumstances as to be accompanied by violence or mass picketing of such a nature as to justify prohibiting all picketing as in Meadowmoor Dairies case, *Milk Wagon Drivers Union v. Meadowmoor Dairies,* 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836, or (2) where picketing is for a purpose in violation of statutory or common law principles which are themselves not in violation of the Federal Constitution, as in *Hughes v. Superior Court,* 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985. *Giboney v. Empire Storage & Ice Co.,* 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834; *International Brotherhood of Teamsters v. Hanke,* 339 U.S. 470, 70 S.Ct. 773; *Building Service Emp. Intern. Union v. Gazzam,* 339 U.S. 532, 533, 70 S.Ct. 784.

The view that we have taken in this case is in our opinion entirely consistent with previous cases of this Court on the subject. For example, in the case of *Rowe Transfer & Storage Co. v. International Brotherhood,* 186 Tenn. 265, 209 S.W.2d 35, the distinguishing fact was that a majority of the twenty-odd eligible-for-labor-union-membership employees of Rowe Transfer & Storage Company made a written designation of the defend-

ant labor union as their bargaining representative, the purpose being to secure higher wages.

In *Watson Co. v. Wilson,* 187 Tenn. 402, 215 S.W.2d 801, 802, the sole question there was:

"Can a union peacefully picket a place of business where it has no members at all (and does not seek or hope to have any) simply for the purpose of inducing potential customers to not patronize such establishments?"

In both of these cases the picketing was free of violence and was for a legitimate objective, that is for the purpose of advertising and not for coercion.

Let the decree of the lower Court be affirmed with costs.