L. A. FLATT

*v.*

BARBERS' UNION, ETC., et al.

(*Nashville,* December Term, 1956.)

Opinion filed May 3. 1957.

ULYSSES A. BURGESS, TAYLOR, COSTEN & TAYLOR, Memphis, for appellee (complainant).

ROBERT A. TILLMAN, Memphis, for appellants (defendants).

Mr. Chief Justice Neil delivered the opinion of the Court.

The complainant in the court below, and appellee here, has filed a petition to rehear complaining that the Court erred in reversing the Chancellor's decree. The Chancellor heard the cause on bill and answer and issued a permanent injunction restraining members of the Barbers' Union from picketing the complainant's place of business.

Upon a full consideration of the record, and our opinion responding to appellants' assignments of error, we feel that the petition to rehear should be granted. It is so ordered and the decree of the Court heretofore entered is set aside and for nothing held.

The majority of the Court, upon further consideration of the issues presented, are of opinion that the Chancellor was not in error in issuing the permanent injunction complained of.

Contention was made on the original hearing that when a cause is heard on bill and answer the answer must be taken as true; that the defendant's denial in its answer that picketing the complainant's place of business was not intended to compel him to join the Barbers' Union. But its purpose was to induce him to "raise his prices for work."

The original bill, however, charged that defendants (Barbers' Union, Local No. 136, and certain named individual members) "have for several months been trying to force him to join the local barber's union and raise his prices for barbering 25%" etc., and that he has refused to do so; that for some months prior to filing the present bill the defendants had one and two pickets walking back and forth on the sidewalk in front of his home and shop, carrying printed signs to this effect, "This Shop is Unfair to the Barbers Union". At the time the present bill was filed "two men were walking in front of his home and shop" carrying the same printed sign. It is further charged in the bill:

"The said Barbers Union, local 136 thru their officers or members, have prevailed upon the Memphis Linen Supply Company in Memphis to refuse to deliver necessary laundry and barber's supplies to the complainant, in an effort to force and hurt complainant's barber business.

"That now said Memphis Linen Supply Company fails and refuses to deliver to complainant any towels or other barber supplies, solely on the grounds that the said barbers union has threatened not to patronize them, but to withdraw all of their business therefrom, unless they would not deliver any goods to or do any business with this complainant."

We now consider the answer to the foregoing charges, which appellants say must be accepted as true.

The answer substantially admits the truth of the charges, that is that complainant's place was picketed by members of the union, and that certain "union barbers individually have prevailed upon the Memphis Linen Supply Company to refuse to deliver said supplies to the complainant"; that in so doing they were acting lawfully.

There follows a categorical denial that defendants have at any time intended, by their acts, to "force complainants to join the union." There are other statements made in the answer which are not relevant to the present issue, such as efforts made by the defendants to raise standards and prices.

We feel that the answer is conclusive of the charge in the bill, that the defendants and associated members of the union are attempting to put the complainant completely out of business unless he complies with their demands. As a result of continued picketing, and actions in prevailing upon the Memphis Linen Supply Company not to furnish complainant any barber supplies, it is not profitable for him to continue in business. Moreover, the signs carried by defendants' pickets are to prevail upon the public to cease patronizing the complainant on the ground that he is a non-union barber.

There appears in the answer this following statement: "They (defendants) aver that the right to bestow or withhold patronage from any firm or person for any reason satisfactory to themselves is lawful and not actionable at law or in equity." While they are privileged to patronize whomsoever they please, they cannot by force

and intimidation deny to others a free choice. It is contrary to our "Right to Work" statute, 50-208, T.C.A., as well as the holding of this Court in *Bailey v. Master Plumbers,* 103 Tenn. 99, 100, 52 S.W. 853, 46 L.R.A., 561; wherein it is said:

"The courts, with practical unanimity, hold that contracts, agreements, arrangements or combinations, in whatever form or name, are contrary to public policy and void when they tend to impair competition in trade and to enhance prices to the injury of the public."

In *Lyle v. Local No. 452, Amalgamated Meat Cutters & Butchers,* 174 Tenn. 222, 229, 230, 124 S.W.2d 701, 704, the Court holds (supported by a vast array of authorities):

"Most of these decisions are based upon the principle that the right to conduct a lawful business is a property right, protected by the common law and guaranteed by the organic law of the State; and that when necessary to prevent irreparable injury an injunction will be granted to prevent third persons, who are not employees and have no contractual relations with the employer, from injuring or destroying his business by so-called peaceful picketing. Some of the cases are rested upon the theory that such picketing amounts to a nuisance, and as such will be enjoined.

"The general rule, supported by many decisions, both State and Federal, is stated in 32 C.J., 155, as follows:

" 'Since the right to carry on a lawful business without obstruction is a property right, acts committed without just cause or excuse, which interfere with the

carrying on of complainant's business and destroy his custom, his credit, or his profits, do an irreparable injury and authorize the issuance of an injunction.' "

We do not wish to be understood as holding that members of a union are forbidden the right of peaceful picketing for a lawful purpose. The actions of the defendant, however, as disclosed in the answer, portray a situation which, if continued, would result in depriving complainant of the right to carry on a lawful business.

Upon full consideration of the foregoing authorities, we are constrained to overrule the assignments of error. The decree of the Chancellor is affirmed.

PREWITT, TOMLINSON and BURNETT, JUSTICES, concur.

SWEPSTON, JUSTICE (dissenting).

This case comes to us on direct appeal after a hearing on bill and answer. My construction of the pleadings differs materially from that of the majority view.

The bill in this case alleges that the complainant Flatt is a non-union barber and that for several months the defendant Union has been trying to force him to join the local Barbers' Union and raise the prices of his barbering services but that he is not willing to do either one and has refused to do so; that last fall and winter the defendant Union had one and two pickets walking back and forth on the sidewalk in front of his combination home and shop, carrying signs, "This shop is unfair to the Barbers' Union;" that there is no strike or other known cause for their acts except to force him to comply with their wishes; that the sole purpose is to intimidate, coerce and force complainant to comply with their

will and that he will suffer great loss, damages and injury if they are not restrained.

Further, that the Union through its officers and members have prevailed upon the Memphis Linen Supply Company to refuse to deliver necessary laundry and barber supplies to him in an effort to hurt his business, and to that end they have threatened not to patronize said Linen Supply Company and to withdraw all their business therefrom.

The answer denied that the Union or any of its officers have been trying to force complainant to join the Union. It is admitted that for a time last fall the Union placed pickets on the sidewalk as alleged but deny that the sign read as alleged and state that the sign read, "This shop does not employ union barbers." It is denied that the Union had more than one picket at a time in front of the place of business, or that said picketing was continuous but only occurred from May 7 to May 11, 1956, and on May 19, 1956. It is further denied that they have sought to force complainant to join the Union but have only sought to have the complainant and the three barbers, whom he employs, to observe the minimum standards provided for in the contracts between defendant Union and competitors of complainant; they deny that the Union had ever insisted that complainant employ union barbers or that he discharge any of his present employees and deny that they have ever insisted upon any of his said employees joining the Union.

It appears from the bill and the answer that the respective prices charged by the complainant are less than the prices charged by the Union shops.

The answer denies that the Union through its officers or members have prevailed upon the Linen Supply Company to refuse to do business with the complainant.

Since this hearing was on bill and answer the statements of fact in the answer must be taken as true.

This is another case of so-called "stranger picketing," as in another case that is *Pruitt v. Lambert,* 201 Tenn. 291, 298 S.W.2d 795. The Chancellor was of opinion that the injunction should issue for the reason that, as he viewed the matter, the Supreme Court has felt compelled to back away from its "tenuous" holding in *A. F. of L. v. Swing,* 312 U.S. 321, 61 S.Ct. 568, 85 L.Ed. 855, wherein the Court declared unequivocally that peaceful picketing was no more than the exercise of free speech guaranteed by the Constitution of the United States and that the same could not be enjoined. The basis of his view was predicated on the decisions in *Giboney v. Empire Storage & Ice Co.,* 336 U.S. 490, 498, 69 S.Ct. 684, 93 L.Ed. 834, and the other cases cited in the opinion in the above referred to *Pruitt v. Lambert* case. He quoted copiously from *Chucales v. Royalty,* 1955, 164 Ohio St. 214, 129 N.E. 2d 823, 826, which opinion cites all of the cases above referred to and many more.

He was further of the opinion that our cases of *Rowe Transfer & Storage Co. v. International Brotherhood,* 186 Tenn. 265, 209 S.W.2d 35; and *Watson Co. v. Wilson,* 187 Tenn. 402, 215 S.W. d 801, declined to follow our case of *Lyle v. Local No. 452, Amalgamated Meat Cutters & Butchers,* 1939, 174 Tenn. 222, 124 S.W.2d 701, because the Court felt constrained to bow to the superior force of the Swing decision, while not retreating from the dec-

laration of the law and public policy of Tennessee, as stated in the Lyle case.

He concluded, therefore, that the superior force being eliminated, the law and public policy of the State of Tennessee is that which is declared by this Court in the Lyle case.

With deference to the able Chancellor I am not able to go all the way on this view which he entertains. While it is conceded by both counsel in this case and so stated by another able lawyer, the Honorable Thorlow Smoot, whose article appeared in the September issue of the American Bar Journal, that picketing may be enjoined if the objective of the picketing is held by a State Court to be against the policy of the State, either as shown by a statute or as determined by that Court, yet it must be remembered that the State policy as declared by statute or common law must itself not be violative of the Federal Constitution. Hence, if we say that peaceful picketing under the Swing and the Thornhill [*Thornhill v. State of Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093] cases is but the right of free speech, and no case has held otherwise since those two cases were decided, then we cannot say that strictly peaceful picketing by strangers can be enjoined because of the public policy formerly announced in the *Lyle v. Local No. 452, Amalgamated Meat Cutters & Butchers* case.

Accordingly, it seems to me that as the instant case is presented on the bill and answer it presents a simple case of peaceful picketing for advertising or persuasive purposes just as was the situation in *Watson Co. v. Wilson, supra,* and that the Chancellor was in error in issuing the injunction in this case.