Newton O. ENNIS, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

Dec. 28, 1976.

Certiorari Denied by Supreme Court March 14, 1977.

Daniel B. Minor, Kingsport, for appellant.

Brooks McLemore, Jr., Atty. Gen., David L. Raybin, Asst. Atty. Gen., Carl K. Kirkpatrick, Dist. Atty. Gen., Kingsport, for appellee.

## OPINION

### GALBREATH, Judge.

The appellant was convicted by the Criminal Court of Sullivan County of robbery and sentenced to serve not less than 7 nor more than 15 years in the penitentiary. His contentions on appeal are that the evidence of guilt was insufficient; that his identification as one of the two men who robbed the Kingsport Minute Market on the night of May 2, 1975 was impermissibly influenced by the showing of his photograph to the clerk on duty on the night in question along with the suggestion that the photograph was the picture of the person who had robbed the market; and that the cross examination of a defense witness was so prejudicial that a mistrial should have been

ordered. We overrule all the assignments of error and affirm.

The store clerk, Mike Myer, testified that the defendant was one of the men who robbed the market. He stated that his identification was based on the observation of the .defendant at the store during the course of the robbery, rather than a picture shown to him some 4 months later by a fellow employee who at the time told him he thought he had the picture of the person who had committed the robbery.

The trial judge conducted a full evidentiary hearing outside the presence of the jury and from the circumstances found that the in-court identification was not tainted by the photographic exhibition. The clerk had failed to identify any of a number of mug shots in a group shown to him by the police shortly after the robbery, but did pick the defendant's picture out of a second group shown to him by the police months later, after the co-employee had shown him the defendant's picture. A finding by the trial judge in this regard carries with it the weight of a jury verdict and is binding on appeal unless the evidence preponderates against it. *Carroll v. State*, 212 Tenn. 464, 370 S.W.2d 523 (1963); *State v. Meadows*, 215 Tenn. 668, 389 S.W.2d 256 (1965); *Lloyd v. State*, 223 Tenn. 1, 440 S.W.2d 797 (1969).

From the testimony of Mr. Myers it is clear that, while he knew what the robber looked like at the time of the robbery, he did not know his identity. When he was first shown pictures of others by the police it did nothing to assist him in learning who the person was that he had observed closely enough to later recognize. (The second robber was not observed well enough for the victim to later recognize under any circumstances.) The clerk was able to identify the defendant as one of the two men who participated in the robbery every time he was shown a picture of him. This evidence amply supports the jury finding as to the identification of the defendant.

Even if the exhibition of the defendant's photograph to Myer's had been

unduly suggestive, this fact would not, per se, have excluded the resulting proof of identification. The decisions of the United States Supreme Court relied on by the appellant dealing with identification procedures involved in line-ups, show-ups, and photographic exhibits are inapplicable because they all pertain to investigations by the police. See *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); see also *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). These decisions, as well as others such as *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) and *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), require the exclusion of evidence obtained in violation of one or more of the constitutional rights available to defendants caught up in criminal prosecutions. The purpose of this rule is to inhibit governmental misconduct during criminal investigations by restricting the use of the fruits of unconstitutional procedures against an accused. As *Mapp, supra,* admonished:

> Nothing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence. 367 U.S. at 659, 81 S.Ct. at 1694.

There is no suggestion that the co-employee who showed the victim the defendant's picture was an agent for the police. The safeguards of the exclusionary rule do not extend to the activities of private citizens. Thus, a confession made in confidence to a neighbor or one obtained by trick or coercion by a private individual does not have to be measured against standards established for police investigations. A thief may testify as to stolen property he observed after breaking into the warehouse of a "fence" without regard to the accused's protections against unreasonable searches of his property. Private deprivations of an accused's rights may involve civil or criminal sanction or may affect the weight given evidence so obtained but they do not result in the exclusion of the evidence itself.

In the instant case the jury judged the credibility of the store clerk's testimony linking the appellant with the crime. We must assume that the jury took into account the manner in which the identification was made and its reliability. We cannot hold that the evidence was either inadmissible or insufficient.

We also overrule the assignments of error flowing from testimony brought out on cross-examination by a witness for the defense who told the jury that he, and not the defendant, committed the robbery. This witness had a long history of criminal convictions and was serving a sentence in the penitentiary at the time of the trial. This witness admitted that he had escaped and had attempted to escape from lawful confinement on a number of prior occasions. The witness also admitted that he had secreted a handcuff key in his clothing before leaving the penitentiary in order to effect an escape while in Sullivan County for the purpose of being a witness in this case. The witness candidly testified that "every prisoner prepares for an escape at all times. He had hacksaw blades sewed in his shoes, keys sewed there___I've got an extra key here." Whereupon the witness pulled a key from a hiding place to show the jury. The judge then ordered a court officer to confiscate the key.

The purpose of this rather dramatic cross-examination and its startling result was to impeach the witness and to show that he had an improper motive for testifying, namely escape, while being transported to and from the prison. It is always material to show by way of impeachment a motive other than truthfulness for being a witness. *Maxwell v. State*, 50 Tenn. 420 (1872); *Markland v. Elizabethton General Hospital*, 5 Tenn.App. 519 (1927).

Affirmed.

RUSSELL and DAUGHTREY, JJ., concur.