DR. JOE BRYANT,                    )
                                   )
        Plaintiff/Appellant,       )        Wilson Chancery
                                   )        No. 96332
VS.                                )
                                   )
TENET, INC. (NATIONAL MEDICAL      )
ENTERPRISES) d/b/a UNIVERSITY      )        Appeal No.
MEDICAL CENTER,                    )        01A01-9703-CH-00132
                                   )
        Defendant/Appellee.        )

FILED

November 25, 1997

Cecil W. Crowson
Appellate Court Clerk

IN THE COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE

APPEAL FROM CHANCERY COURT OF WILSON COUNTY
AT LEBANON, TENNESSEE

HONORABLE C. K. SMITH, CHANCELLOR

Mr. Henry Clay Barry
106 S. College Street
Lebanon, Tennessee 37087
ATTORNEY FOR PLAINTIFF/APPELLANT

Mr. William C. Moody
95 White Bridge Road
Suite 509, Cavalier Bldg.
Nashville, Tennessee 37205-1427
ATTORNEY FOR DEFENDANT/APPELLEE

# D I S S E N T.

HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

DR. JOE BRYANT, )
            )
         **Plaintiff/Appellant,** )     **Wilson Chancery**
            )     **No. 96332**
**VS.** )
            )
**TENET, INC. (NATIONAL MEDICAL** )
**ENTERPRISES) d/b/a UNIVERSITY** )     **Appeal No.**
**MEDICAL CENTER,** )     **01A01-9703-CH-00132**
            )
         **Defendant/Appellee.** )

# D I S S E N T

The only difference of opinion in this Court is whether the information in the record is sufficient to justify the result reached by the majority. The original opinion, which was not accepted by the majority, is now filed as a dissent to demonstrate the necessity for a remand for further information.

The defendant, Tenet, Inc., d/b/a University Medical Center, has appealed from a non jury judgment of the Trial Court regarding the practice of medicine by the plaintiff, Dr. Joe Bryant, in the defendant's hospital.

The judgment of the Trial Court states:

> This case having come on to be heard on September 12, 1996, upon the plaintiff's complaint for injunctive relief, the Court having considered the pleadings, statements of counsel, stipulations, exhibits and testimony of witnesses and it appearing to the Court that a permanent injunction should be issued prohibiting the defendant from conducting any further disciplinary action against the plaintiff as a result of the circumstances giving rise to this suit until the defendant has provided the plaintiff with a written notice of the complaints being investigated ten days prior to an Executive Committee meeting held to investigate such complaints at which the plaintiff shall have an attorney present for consultation and advice only, it appearing to the Court that the defendant's by-laws have deprived the plaintiff of his rights guaranteed by Section VIII, Article I, of the Tennessee Constitution, and the plaintiff's right to due process under the by-laws themselves.

IT IS HEREBY DECREED, that the defendant is enjoined from conducting any further disciplinary actions pursuant to its by-laws against the plaintiff as a result of the circumstances from which this suit arises until such time as the defendant has provided the plaintiff with written notice of the complaints it is investigating and the defendant schedules a new Executive Committee investigation more than ten days thereafter at which the plaintiff shall have the right to have an attorney present for his own consultation and advice.

In this Court, the defendant states the issues as follows:

1. When a medical staff committee of a private hospital takes action, pursuant to its bylaws, that limits a staff member's privileges, is that staff member entitled to procedural due process at each step of the proceedings by Article 1, § 8 of the Constitution of the State of Tennessee?

2. If so, do the provisions of the defendant's bylaws, for taking action which limits the privileges of staff members, comply with Article 1, § 8 of the Constitution of the State of Tennessee?

3. Do the defendant's bylaws guarantee the plaintiff procedural due process, as the term is understood in a legal context, at the Executive Committee Stage?

4. Is injunctive relief appropriate at this stage of the proceeding or must the plaintiff exhaust all of his administrative remedies?

The plaintiff states the issues as follows:

1. Is a doctor entitled to "Due Process", or fairness and justice, before his privileges or liberties may be adversely affected by the Defendant or it's Executive Committee, under the fact of this case?

2. Do these by-laws, either upon their face or by their operation in this case, violate Due Process, which the same guarantee?

The following facts are essentially undisputed:

Dr. Bryant has practiced as a general surgeon at University Medical Center for many years. University Medical Center, (hereafter, UMC) is a private hospital owned by Tenet, Inc. Some time in early June 1996, he performed a PEG procedure on a comatose patient who was

-3-

on a morphine drip. During this procedure, he apparently had a dispute with nurses in the operating room about his decision not to anesthetize the patient during the procedure. Following the procedure, one or more nurses filed a formal complaint with UMC's administrator and reported the incident on Tenet's patient abuse hotline.

At UMC there is a "chief of staff", who is presumably selected by the physicians practicing in the hospital. Whether he is also an official of the hospital itself does not appear from the record.

One or two weeks after the above described incident, the "chief of staff" discussed the incident with Dr. Bryant and asked him to attend a meeting of "the executive committee" to review the incident. The record does not disclose whether the "executive committee" of the medical staff is a part of the management of the hospital, itself. Dr. Bryant declined to attend stating "unless I had a written letter from someone, I wouldn't be there." Several days later, Dr. Bryant received written notice of the executive committee meeting. He also received notice of the number of the patient's chart and was even given a copy of the chart which he showed to other physicians before the hearing. Apparently he was not given the incident report that had been filed by one or more of the operating room nurses.

Prior to the meeting, Dr. Bryant wrote a lengthy, detailed letter to UMC's administrator presenting his response to the nurses' complaints and accusing the nurses of ineffectiveness in the operating room. On the day of the executive committee's meeting, Dr. Bryant insisted that the committee permit his lawyer to attend the meeting. After the committee denied his request, Dr. Bryant refused to attend the meeting. The record does not indicate what, if any, action was taken by the committee after Dr. Bryant's departure.

Shortly thereafter, Dr. Bryant filed suit this against Tenet seeking to enjoin the hospital "from proceeding against...[him] under the said by-laws." It is not clear whether the by-laws

were those of the medical staff or of the management of the hospital. He asserted that the hospital's by-laws permitted a "star-chamber type proceeding" and that the by-laws "unconstitutionally deprive the Plaintiff of his constitutional right to due process of the law." At the hearing on the application for permanent injunction, the trial court granted Dr. Bryant's oral motion to amend to add a breach of contract claim to his complaint. The trial court determined that the hospital procedures did not violate Dr. Bryant's federal constitutional rights but that they did violate Dr. Bryant's state constitutional and contractual rights. Accordingly, the trial court entered an order enjoining UMC from conducting any further disciplinary proceedings against Dr. Bryant until it (1) provides him with written notice of the complaints against him, (2) commences a new executive committee investigation, and (3) allows Dr. Bryant to have an attorney "present for his own consultation and advice" during all stages of the proceedings.

The injunction granted by the Trial Court appears to be intended to prevent the hospital from curtailing or terminating Dr. Bryant's use of the facilities of the hospital, but it does not appear to affect the actions of the medical staff or its committee who are not parties to the suit.

The record does not include a complete set of the by-laws of the medical staff. The record does contain a portion of the by-laws of the staff governing "corrective actions" and "hearing and appellate review procedures."

T.C.A., Title 63, Chapter 6 is entitled, "Medicine and Surgery." Part 1 of Chapter 6 creates a Board of Medical Examiners. Part 2 of Chapter 6 is entitled "General Provisions," Section 63-6-219 reads as follows:

> (a)(1) In conjunction with the applicable policies of the Health Care Quality Improvement Act of 1986 (42 U.S.C. §§ 11101-11152), it is the stated policy of Tennessee to encourage committees made up of Tennessee's licensed physicians to candidly, conscientiously, and objectively evaluate and review their peers' professional conduct, competence, and ability to practice medicine. Tennessee further recognizes that confidentiality is essential both to

effective functioning of these peer review committees and to continued improvements in the care and treatment of patients.

(2)    As incentive for the medical profession to undertake professional review, including the review of health care costs, peer review committees must be protected from liability for their good-faith efforts. To this end, peer review committees should be granted certain immunities relating to their actions undertaken as part of their responsibility to review, discipline, and educate the profession. In instances of peer review committees examining the appropriateness of physicians' fees, this immunity must also extend to restraint of trade claims under title 47, chapter 25. (Emphasis supplied)

(b)    As used in this section, "medical review committee" or "peer review committee" means any committee of a state or local professional association or society, including impaired physician peer review committees, programs, malpractice support groups and their staff personnel, or a committee of any licensed health care institution, or the medical staff thereof, or any committee of a medical care foundation or health maintenance organization, preferred provider organization, individual practice association or similar entity, the function of which, or one (1) of the functions of which, is to evaluate and improve the quality of health care rendered by providers of health care service to provide intervention, support, or rehabilitative referrals or services, or to determine that health care services rendered were professionally indicated, or were performed in compliance with the applicable standard of care, or that the professional health care services in the area and includes a committee functioning as a utilization review committee under the provisions of Public Law 89-97 (42 U.S.C. §§ 1395-1395pp) (Medicare law), or as a utilization and Review Improvement Act of 1982, Public Law 97-248, §§ 141-150, or a similar committee or a committee of similar purpose, to evaluate or review the diagnosis or treatment or the performance or rendition of medical or hospital services which are performed under public medical programs of either state of federal design.

(c)(1)    All state and local professional associations and societies and other organizations, institutions, foundations, entities and associated committees as identified in subsection (b), physicians, surgeons, registered nurses, hospital administrators and employees, members of boards of directors or trustees of any publicly supported or privately supported hospital or other such provider of health care, any person acting as a staff member of a medical review committee, any person under a contract or other formal agreement with a medical review committee, any person who participates with or assists a medical review committee with respect to its functions, or any other individual appointed to any committee, as such term is described in subsection (b),

-6-

is immune from liability to any patient, individual or organization for furnishing information, data, reports or records to any such committee or for damages resulting from any decision, opinions, actions and proceedings rendered, entered or acted upon by such committees undertaken or performed within the scope or function of the duties of such committees, if made or taken in good faith and without malice and on the basis of facts reasonably known or reasonably believed to exist. (Emphasis supplied)

(2) Notwithstanding the provisions of subdivision (c)(1), any person providing information, whether as a witness or otherwise, to a medical review committee regarding the competence or professional conduct of a physician is immune from liability to any person, unless such information is false and the person providing it had actual knowledge of such falsity.

(3) A member of a medical review committee, or person reporting information to a medical review committee, is presumed to have acted in good faith and without malice. Any person alleging lack of good faith has the burden of proving bad faith and malice.

(d) All information, interviews, incident or other reports, statements, memoranda or other data furnished to any committee as defined in this section, and any findings, conclusions or recommendations resulting from the proceedings of such committee are declared to be privileged. All such information, in any form whatsoever, so furnished to, or generated by, a medical review committee shall be privileged communication subject to the laws pertaining to the attorney-client privilege. The records and proceedings of any such committees are confidential and shall be used by such committee, and the members thereof only in the exercise of the proper functions of the committee, and shall not be public records nor be available for court subpoena or for discovery proceedings. One (1) proper function of such committees shall include advocacy for physicians before other medical peer review committees, peer review organizations, health care entities, private and governmental insurance carriers, national or local accreditation bodies, and the state board of medical examiners of this or any other state. The disclosure of confidential, privileged peer review committee information to such entities during advocacy, or as a report to the board of medical examiners under § 63-6-214(d), or to the affected physician under review does not constitute either a waiver of confidentiality or privilege. Nothing contained herein applies to records made in the regular course of business by a hospital or other provider of health care and information, documents or records otherwise available from original sources are not to be construed as immune from discovery or use in any civil proceedings merely because they were presented during proceedings of such committee. (Emphasis supplied)

Article 1 § 8 of the Constitution of Tennessee provides:

> No man to be disturbed but by law. - That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land.

The right to work or to contract in regard to work is a property right which is protected by the constitutional provision. *Bryan v. International Alliance*, 43 Tenn. App. 180, 306 S.W.2d 64 (1957).

The right to contract is subject to curtailment, limitation and destruction by the legislature where such is done pursuant to "the law of the land." *Daugherty v. State*, 216 Tenn. 666, 393 S.W.2d 739, cert. denied, 384 U.S. 435, 86 S. Ct. 1601, 16 L. Ed. 2d 671 (1966).

The "due process" right afforded by the Tennessee Constitution includes the right to do a lawful business. *Lyle v. Amalgamated Meat Cutters, etc.*, 174 Tenn. 222, 124 S.W.2d 701 (1939).

Both the words "liberty" and "property" include the right to make contracts, and contracts are entitled to the same protection as property. *State, ex rel., Hamby v. Cummings*, 166 Tenn. 460, 63 S.W.2d 515 (1933).

However, the right to contract is subject to legislative control, and is subject to curtailment, limitation and destruction by "the law of the land". *Daugherty v. State*, 216 Tenn. 666, 393 S.W.2d 739, cert. denied 384 U.S. 435, 865 Ct. 1601, 16 L. Ed.2d 671 (1966).

State licensing regulations require hospitals to enact by-laws containing "fair hearing procedures" concerning the granting, suspension, and removal of medical staff appointments, reappointments, and/or delineation of privileges." *Lewisburg Community Hosp. v. Alfredson*, Tenn. 1992, 805 S.W.2d 756, 759.

The portion of the by-laws exhibited to this record appear to establish a three-tier process that is intended to incorporate the peer review process endorsed by the General Assembly in Tenn. Code Ann. § 63-6-219 (1997). The process is triggered by the filing of a "request for corrective action." The first step of the process is an informal "investigation" by the executive committee. The by-laws state specifically that this step is not a "hearing" and permit the executive committee to take a broad range of actions. The by-laws are silent about the role of lawyers during the first phase; however, it is uncontradicted that lawyers are not permitted to be present at any of the first stage meetings during the investigative process.

Any person dissatisfied with the executive committee's recommendations may appeal. The second stage of the proceeding is much more formal than the first and involves a hearing before a medical review committee specifically chosen to hear the appeal. The by-laws require a written notice. They also require the executive committee to provide the physician with "notice of the acts or omissions with which the affected practitioner is charged or a list of the chart numbers under question, if any, or the reasons for the action or recommendation." The parties are permitted to use "representatives," who may be lawyers.

The hearing procedure is quite formal. The hospital must present its case first, the physician second, and both parties are permitted to present rebuttal proof. If the physician is the appealing party, he or she must prove by clear and convincing evidence that the action or the recommendation of the executive committee was arbitrary, unreasonable, or not supported by substantial evidence.

The third and final step of the process is an appeal to the governing body of the hospital. This review is based on the record of the prior proceedings, and the grounds for review include (1) the failure of the earlier proceedings to comply with the by-laws, (2) the failure to afford due process or a fair hearing, (3) that the recommendation was arbitrary, unreasonable, or capricious, (4) that the medical review committee's decision was contrary to the weight of the

evidence, or (5) that any by-law relied on by the medical review committee lacked substantive rationality.

Dr. Bryant's first issue seeks a ruling upon the right of a physician to due process in proceedings by fellow physicians in respect to complaints made against him. The record is not sufficiently definitive to permit a specific ruling in this respect. Three elements must be established to enable such a ruling.

First, does there exist a recognized group of doctors who have agreed together upon a "peer review" procedure to improve the quality of their practice? If so, the nature of such procedure must conform with the agreement formed by the doctors or accepted by a new arrival upon joining the group. If this fact exists, and the results reached in the peer review procedure are not final or binding in respect to use of hospital facilities, then it would appear that the affected doctor has contractually waived any constitutional due process in proceedings before the peer review committee. If, however, the results of the peer review procedure are enforceable by exclusion from use of hospital facilities, the doctor is entitled to "due process" in the procedure.

A definitive ruling upon the foregoing must await an evidentiary record which discloses the details of the controlling by-laws or agreements.

Appellant's second issue seeks a ruling regarding the constitutionality of "the defendant's by-laws." The record does not establish that the portion of the "by-laws" included in the record is in fact a portion of the by-laws of the hospital, rather than of the group of doctors who practice in the hospital. If it should be shown that the hospital has a set of by-laws or rules, or is bound to enforce the decisions of the medical staff as to exclusion of a doctor, then the hospital might be enjoined from enforcement of a decision the staff reached without

due process. On this premise, it was not error to enjoin the hospital from enforcing the results of a procedure until the constitutionality of the procedure has been examined and determined.

If the hospital is not bound by the staff procedure, but conducts a *de novo* investigation and determination of the right of a doctor to use its facilities, then it may appear that the issuance of the permanent injunction was not in order.

Appellant's third issue requests a ruling as to whether procedural due process is guaranteed by "defendant's by-laws." (Defendant is the hospital.) The record does not disclose the hospital's by-laws. Thus, a definitive ruling on the defendant's third issue should await a full disclosure of its by-laws, rules or adopted procedures.

Appellant's fourth, and last issue suggests that defendant be required to exhaust his administrative remedies before seeking injunctive relief. In view of the constitutional question involved, the seriousness of the possible damage to the affected physician, and the possible waste of time and effort in invalid procedure, a precautionary injunction was permissible.

Dr. Bryant's two issues have been explored above, but a definitive ruling thereon must await the development of a more informative record. T.C.A. § 27-3-128 provides for remand where required to do complete justice. Such a remand is necessary in the present appeal.

For the reasons stated, the judgment of the Trial Court should be modified to provide that the "permanent" injunction shall be effective until further order of court, after further hearing. The cause should be remanded to the Trial Court for further proceedings in conformity with this opinion.

**RESPECTFULLY SUBMITTED.**

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION