IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 11, 2007 Session

## GERALD INGLE, d/b/a INGLE'S SAWMILL & LOG CO. v. CHRISTOPHER W. HEAD and wife, BERNADINE L. HEAD

Direct Appeal from the Chancery Court for Hardin County
No. 6042     Ron E. Harmon, Chancellor

No. W2006-02690-COA-R3-CV - Filed December 26, 2007

This appeal involves a motion to set aside an execution on a vehicle.  The plaintiff received a judgment against the defendants in the amount of $62,500, which he promptly recorded in the county register's office.  The defendants subsequently purchased a new car, and a sheriff levied execution on the car to partially satisfy the judgment.  The defendants filed this motion seeking to have the execution set aside because it was defective for various reasons, and they claimed that a third party held a security interest in the vehicle and had priority over the execution lien.  The trial court denied the motion to set aside the execution and ordered the sheriff's department to sell the vehicle.  The defendants appealed.  We affirm.

Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed

ALAN E. HIGHERS, P. J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Curtis F. Hopper, Savannah, TN, for Appellants

Chadwick G. Hunt, Savannah, TN, for Appellee

## OPINION

### I. FACTS & PROCEDURAL HISTORY

On January 24, 2003, Gerald Ingle d/b/a Ingle's Sawmill & Log Co. ("Plaintiff" or "Mr. Ingle") received a judgment against Christopher and Bernadine Head ("Defendants" or "Mr. and Mrs. Head") for $62,500, in Hardin County Chancery Court. Plaintiff recorded a certified copy of this judgment in the record book in the Hardin County Register's Office on February 12, 2003.

On December 2, 2005, Mr. Head purchased a new 2006 Chevrolet Corvette, white in color, from Chuck Hutton Chevrolet in Memphis, Tennessee. According to the bill of sale, the total price of the car was $54,468.18, which was paid in full with no balance left owing. On the same day that Mr. Head purchased the vehicle, he submitted an application for certificate of title and registration to the Tennessee Department of Safety. The application did not identify any lien holders and certified that there were no liens on the vehicle.

On January 30, 2006, the clerk and master issued an execution and garnishment directing an officer to take possession of a "2006 Chevrolet Corvette - white," with a Vehicle Identification Number ("VIN number") of 1G1YY264265107525, belonging to Mr. and Mrs. Head, to satisfy the judgment. A single line is drawn through the VIN number. A deputy sheriff levied on the Corvette on February 21, 2006, and the officer's return is dated March 1, 2006.

On March 2, 2006, Mr. Head submitted a second application for certificate of title and registration to the Tennessee Department of Safety, this time listing one Dennis Cossey, of Cordova, Tennessee, as a first lien holder on the vehicle, and listing December 2, 2005, as the date of his lien.

On March 7, 2006, Mr. and Mrs. Head filed a "Motion to Set Aside Execution and Return of Property" in Hardin County Chancery Court. They alleged that the execution should be set aside because it listed the wrong VIN number for the Corvette, and they claimed that the Corvette was encumbered. Attached to the motion were copies of the two applications for certificate of title and the bill of sale. These documents listed the Corvette's VIN number as "1G1YY26**U**265107525." (Emphasis added). The writ of execution and the temporary license tag on the vehicle listed the VIN number as "1G1YY26**4**265107525." (Emphasis added).

Chancellor Ron E. Harmon held a hearing on the motion and ordered the Corvette to be returned to Mr. and Mrs. Head pending another hearing, but the Heads were ordered to post a surety bond, store the vehicle, and were prohibited from encumbering, damaging, or otherwise utilizing the vehicle pending further orders of the court.

On May 2, 2006, Dennis Cossey filed a motion to set aside the execution claiming that he held a prior security interest in the vehicle.[1] He attached to the motion a copy of a certificate of title for the vehicle issued on March 9, 2006, listing him as a lien holder. Mr. Cossey also attached what he described as a copy of a promissory note executed by Mr. Head. This "promissory note" is a single-page, pre-printed form that simply reads:

> Signed in the presence of:
> Witness:  /s/ Jeremy Cossey     Borrower:  /s/ Christopher Head
> . . .
> GUARANTY
> We the undersigned jointly and severally guaranty the prompt and punctual payment of all moneys due under the aforesaid note and agree to remain bound until fully paid.
>
> In the presence of:
> Witness:  /s/ Jeremy Cossey     Guarantor:  /s/ Christopher Head

There are two areas designated for a notary's signature and seal, but the form is not notarized or even dated.

At a hearing before Chancellor Harmon on May 2, 2006, the parties' attorneys presented their oral argument on the motion, but no testimony or other proof was presented. Counsel for Mr. and Mrs. Head contended that the execution was void on its face for three reasons, and he stated that he had "presented all the documented evidence to support this." The first two reasons were those set forth in his motion, regarding the incorrect VIN number and the encumbrance on the Corvette. The Heads' attorney argued that, by statute, an execution must include a particular description of the property to be levied on, which he contended must include the correct VIN number of a vehicle. He also argued that Mr. Cossey's security interest in the vehicle took priority over Mr. Ingle's execution lien, and Mr. Cossey's attorney addressed this issue as well. Finally, the Heads' attorney claimed that Mr. Ingle "seized" the Corvette three days before the clerk and master issued the writ of execution, violating the due process and statutory rights of Mr. and Mrs. Head. However, the basis of this argument was not explained.

At the conclusion of the attorneys' arguments, the chancellor stated that he would hear any proof the parties wished to present for the record. However, none was presented. The chancellor announced his finding from the bench that Mr. Ingle's claim had priority over Mr. Cossey's lien because the execution occurred before the lien was filed with the State of Tennessee. The chancellor further found that the description of the vehicle included on the execution was "more than adequate" to identify it. The Heads' attorney asked about his illegal "seizure" theory, and the chancellor stated

---

[1] It appears that Mr. Cossey did not file a motion to intervene in this case, as the style of the case remained *Gerald Ingle d/b/a Ingle's Sawmill & Log Co. v. Christopher and Bernadine Head*. The final order refers to Mr. Cossey as a third party.

that he did not find the argument relevant to the case. Mr. Ingle's attorney was instructed to prepare a proposed order.

After the Heads' attorney was presented with the proposed order, he filed a "Motion to Clarify Judgment and to Hear Additional Proof Thereon," asking the court to allow additional proof and issue a ruling on the illegal "seizure" issue. Chancellor Harmon held another hearing, at which the Heads' attorney stated that after the first hearing, he learned additional information concerning "how that execution came about," and he wanted to put on additional proof regarding the issue. He then explained the basis of his "seizure" argument to the chancellor. It appears that the Corvette was involved in an accident on Friday, January 27, 2006, and a towing company towed the vehicle from the scene of the accident because it was not drivable. According to the attorneys, at some point, Mr. Ingle learned of the accident and informed the towing company that he had a judgment against the Heads and did not want the towing company to release the Corvette to the Heads. However, Mr. Ingle did not physically seize or take possession of the Corvette, and it remained at the towing facility. The clerk and master issued the writ of execution on Monday, January 30, 2006, and it was levied on the Corvette by a sheriff's deputy.

After hearing the attorneys' summary of the "seizure" argument, Chancellor Harmon stated that he found no basis for asserting such a claim against Mr. Ingle. Chancellor Harmon restated his prior ruling that "the execution issued by the Clerk was properly executed by the Sheriff's Department and that the property was properly taken in satisfaction of the judgment by the plaintiff." An order was entered on December 5, 2006, setting forth the following findings of fact and conclusions of law:

1. On January 24, 2003, the Court entered judgment for the plaintiff against both named defendants in the principal sum of $62,725.50.[2] The plaintiff recorded a certified copy of this judgment in the office of the Hardin County Register on February 12, 2003, in Record Book 299, page 180.

2. On or about December 2, 2005, the defendant Christopher W. Head purchased a white 2006 Chevrolet Corvette, VIN 1G1YY26U265107525, at Chuck Hutton Chevrolet Co. in Memphis, Tennessee. The sales invoice lists no lienholder.

3. On or about December 2, 2005, the defendant Christopher W. Head applied for a Tennessee certificate of title and registration for the 2006 Corvette, certifying no liens against the vehicle.

4. On January 30, 2006, the Hardin County Clerk & Master issued an Execution and Garnishment directing any lawful officer to take possession of the above-referenced 2006

---

[2] The final order awarded judgment for Mr. Ingle in the amount of $62,500, and the defendants were ordered to pay court costs. The execution lists a judgment balance of $62,500, plus 225.50 in clerk's fees.

Corvette and to dispose of it pursuant to the provisions of T.C.A. § 26-1-101 et seq. The Execution and Garnishment described the property to be taken as a 2006 white Chevrolet Corvette, but the VIN listed was 1G1YY264265107525. No other white Chevrolet Corvette has been identified as belonging to the defendants. The defendants filed no notice of their intent to claim any statutory exemption.

5. On or about March 2, 2006, the defendant Christopher W. Head filed a second application for a Tennessee certificate of title and registration of the 2006 Corvette, certifying a lien held by Dennis Cossey against the vehicle.

**Based upon** the foregoing findings of fact, the Court makes the following conclusions of law:

A. The plaintiff holds a valid and enforceable judgment against the defendants in the principal sum of $62,725.50.

B. The plaintiff holds both a judgment lien and an execution lien on the 2006 Chevrolet Corvette.

C. These findings of fact and conclusions of law reached by the Court pertain only to those events occurring after the Clerk & Master issued the execution on the 2006 Chevrolet Corvette, and, therefore, the Hardin County Sheriff's Department properly levied on the 2006 Chevrolet Corvette.

D. The Execution and Garnishment issued by the Hardin County Clerk & Master substantially and adequately described the property to be taken from the defendants.

E. To the extent that Dennis Cossey has a valid security interest in the subject 2006 Chevrolet Corvette, the lien of the plaintiff Gerald Ingle is superior to that of Dennis Cossey.

**WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the Hardin County Sheriff's Department sell the 2006 Chevrolet Corvette, VIN 1G1YY26U265107525, pursuant to the provisions of T.C.A. § 26-5-101, et seq., in partial satisfaction of the plaintiff's judgment.

Mr. and Mrs. Head filed a notice of appeal on December 11, 2006, and filed a "Motion for Stay and Enforcement of Judgment" the following day, asking that the sale of the Corvette be stayed pending appeal. The Heads contended that a bond for stay was not necessary because the vehicle was secure. Following another hearing, the motion for stay was denied. Mr. and Mrs. Head subsequently filed a "Motion for Emergency Injunctive Relief" in this Court, which we interpreted as a motion for review of the trial court's order denying a stay or injunction pending appeal, pursuant to Rule 7 of the Tennessee Rules of Appellate Procedure. Upon due consideration, we denied the motion and declined to stay execution of the trial court's judgment.

## II. Issues Presented

On appeal, Mr. and Mrs. Head present the following issues for review:

1.    Whether the execution is defective in that the VIN number was incorrect and crossed out, thus, executing on the wrong property.
2.    Whether the appellee caused the seizure of the vehicle three days before obtaining issuance of the execution, without a recorded abstract or memorandum registered within sixty days of the rendition of the judgment pursuant to T.C.A. § 25-5-103, and without execution being issued by the clerk.
3.    Whether the court erred in not giving the lien holder, on the face of the title, priority over the execution.
4.    Whether the court erred in not issuing a stay on the sale of the property, violating Tennessee Rule of Civil Procedure 62.03 and 62.04.

For the following reasons, we affirm the decision of the chancery court.

## III. Standard of Review

On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d) (2007); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

## IV. Discussion

### A. The Description of the Property

On appeal, Mr. and Mrs. Head first argue that the execution is void because it described the Corvette using the wrong VIN number, and the VIN number was also crossed out. As support for this argument, they rely solely upon the language of Tennessee Code Annotated section 26-3-108, which simply states that "[a] description of the property levied on, with the date of the levy, shall be endorsed upon or appended to the execution." Without further citation to authority,[3] the Heads claim that the description must include the correct VIN number for a vehicle. As previously discussed, the

---

[3] The Heads' brief does not cite a single case in support of their various arguments.

description listed on the execution in this case misstated the VIN number by including a "4" rather than a "U."[4]

It is clear from the statute that "[a] description" of the property levied on must be endorsed upon or appended to the execution. Tenn. Code Ann. § 26-3-108 (2000). The statute does not distinguish between levies on real property or personal property, but nearly all Tennessee opinions applying this requirement have involved levies on real property.[5] In the one case that we have encountered involving the description requirement and personal property, the Supreme Court simply noted that there was no vagueness or obscurity in the description of the property levied on. *See Ballard v. Dibrell*, 94 Tenn. 229, 28 S.W. 1087 (1895). The property levied on must be sufficiently described because "purchasers must have the means of knowing what land is to be sold, so as to form some estimate of its value; and, . . . there must be such ascertainment, by description of identity, as shall prevent one piece of land from being sold, and a distinct piece conveyed." *Gibbs v. Thompson*, 26 Tenn. (7 Hum.) 179 (1846).

In the realty context, a description ought to show the location of the lands levied on to a reasonable certainty. *Brown v. Dickson*, 21 Tenn. (2 Hum.) 395 (1841); *see also* 33 C.J.S. *Executions* § 120 (2007) ("A description is sufficient if it enables one to locate the property and identify it when found."). However, a description of land will be sufficient "if those living in the immediate neighborhood will recognize the description." *Christian v. Mynatt*, 79 Tenn. 615 (1883) (citing *Freeman on Executions*, p. 281). For example, the land levied on in *Christian* was described as "two hundred acres of land, the property of the defendant, lying in the 8th civil district of Grainger county, on the dividing line between Knox and Grainger counties, adjoining the lands of Joseph Mynatt's heirs, Martha Smartt and others." The Supreme Court explained,

> Whether this of itself is or is not a sufficient description, it is not necessary to determine, as there is full proof that the land is well known in the neighborhood by it, that it is the only land ever owned there by the defendant, and can be easily proved and located by the description.

*Id.* All that is necessary is "some general description that will by reasonable intendment connect it with the sale and deed, so that a tract of land different from the one levied on may not be sold and conveyed." *Id.* (quoting *Parker & Collier v. Swan*, 20 Tenn. (1 Hum.) 80 (1839)). In another case, the Court held that a description of land identifying three sides of the parcel levied on but leaving

---

[4] The VIN number listed on the execution matched the VIN number on the temporary license tag.

[5] As one court aptly noted, "the Tennessee case law considering the requirements for a valid levy is uniformly ancient and frequently unusual." *In re Hockaday*, 169 B.R. 640, 642 (Bankr. M.D. Tenn. 1994); *see, e.g.*, *Steers v. Daniel*, 4 F. 587 (C.C.W.D.Tenn.1880) (finding a levy on a cotton compress not abandoned during "epidemic of 1878"); *Evans v. Higdon*, 60 Tenn. 245 (1872) (considering a levy upon a mule made by peering through cracks of barn); *Shannon v. Erwin*, 58 Tenn. 337 (1872) (involving the tender of a deed to real property delayed nine years due to onset of Civil War).

the fourth unidentified was not void for uncertainty because the fourth side was capable of being determined. ***Stephens v. Taylor***, 74 Tenn. 307 (1880). Examples of descriptions that were found to be void for vagueness are: "lot No. --, in the town of Greenville, with its improvements," ***Brown v. Dickson***, 21 Tenn. (2 Hum.) 395 (1841), and "three hundred and fifty acres of land, the property of Edmond Collins," ***Lafferty v. Conn***, 35 Tenn. (3 Sneed) 221 (1855).

Applying these principles to the case before us, we conclude that the description of the Corvette on the execution is sufficient. The property levied on is described as a "2006 Chevrolet Corvette - white," with a VIN number of 1G1YY264265107525, belonging to Mr. and Mrs. Head. The VIN number has a single line through it, although it is not clear who crossed it out. Mr. and Mrs. Head did not contend that they owned any other white Corvette so that a perfect description of the VIN number was necessary to identify the vehicle. The sheriff's deputy was able to identify the property to be levied on, as indicated by his return. We find that a sufficient description of the property levied on, and the date of the levy, appears on the face of the execution and satisfies the requirements of Tennessee Code Annotated section 26-3-108.

### B.    *"Seizure" Without Execution or a Recorded Memorandum*

Next, we address the Heads' argument that Mr. Ingle caused the seizure of the Corvette three days before obtaining the issuance of the execution, without registering a recorded abstract or memorandum within sixty days of the judgment pursuant to Tennessee Code Annotated section 25-5-103.

Initially, we note that the Heads' brief does not address the issue of whether an abstract or memorandum was recorded pursuant to Tennessee Code Annotated section 25-5-103 other than in this one reference in its statement of the issues. The trial court expressly found that "[t]he plaintiff recorded a certified copy of [the January 24, 2003] judgment in the office of the Hardin County Register on February 12, 2003, in Record Book 299, page 180," and there is nothing in the record to contradict this finding.[6]

Now, regarding the "seizure" argument, the Heads' brief sets forth the same alleged facts about an accident occurring and Mr. Ingle telling the tow truck company that he had a judgment against the Heads and did not want the Corvette to be released. The Heads contend that these facts are "clear from the Evidentiary Record as well as the Technical Record," and that the facts clearly demonstrate that their due process and law of the land rights were violated, and the execution should be set aside. We disagree.

---

[6] The Heads do argue in their brief that they did not receive a receipt or return of the execution as required by Tennessee Code Annotated section 26-1-402. This argument was not presented in the trial court and is therefore waived. ***Correll v. E.I. DuPont de Nemours & Co.***, 207 S.W.3d 751, 757 (Tenn. 2006) ("[I]ssues not raised in the trial court cannot be raised for the first time on appeal."). However, we note that the deputy's return is dated March 1, which was the thirtieth day after it was issued, in accordance with the requirements of sections 26-1-401 and -402.

The Heads' argument is not supported by evidence in the record or citations to relevant authority in their brief. The "facts" that form the basis of the Heads' argument were only stated to Chancellor Harmon by the Heads' attorney at the second hearing, which was held after the chancellor had ruled in favor of Mr. Ingle at the first hearing. Chancellor Harmon specifically offered to hear proof on this issue at the first hearing, and none was presented by the Heads. Still, even assuming that Mr. Ingle did inform the tow truck company of his judgment against the Heads and say that he did not "want" the car to be released, we perceive no apparent claim that would arise in favor of the Heads against Mr. Ingle. The tow truck company maintained possession of the vehicle at all relevant times, and if the Heads were denied possession of the vehicle, it was by the tow truck company, not by Mr. Ingle. The Heads fail to cite any authority for their argument that these actions require the execution to be set aside.

In addition, the Heads' allegations fail to state a claim for violation of their constitutional rights to due process. "State action" is necessary to invoke the protections of the Fourteenth Amendment of the United States Constitution and Article I, section 8 of the Tennessee Constitution. *Bryant v. Tenet, Inc.*, 969 S.W.2d 923, 925 (Tenn. Ct. App. 1997). Accordingly, the constitutional protections of those sections do not apply to the actions of Mr. Ingle. The Heads claim that the Hardin County Sheriff's Department participated in an unlawful detention of the vehicle, but the Sheriff's Department is not a party to this case.

In sum, we find no merit in the Heads' unsupported arguments regarding this issue.

### C.    Priority

Mr. and Mrs. Head next argue that the trial court erred in finding that Mr. Cossey's lien on the vehicle was subordinate to Mr. Ingle's execution lien. In *Keep Fresh Filters, Inc. v. Reguli*, 888 S.W.2d 437 (Tenn. Ct. App. 1994), the Middle Section of this Court resolved a priority dispute strikingly similar to the one presented in this case.[7] The Court explained the law applicable to the issue as follows:

> Three bodies of law govern the respective rights that Keep Fresh Filters and Ms. Senecal have in Ms. Reguli's automobile. They include Article Nine of the Uniform Commercial Code, the statutes governing motor vehicle certificates of title, and the statutes governing judgment liens and executions. Construed together, these

---

[7] In that case, Ms. Reguli purchased a new BMW using money she had borrowed from her daughter, Ms. Senecal. *Reguli*, 888 S.W.2d at 441. However, when she submitted an application for certificate of title and registration, she certified there were no liens on the vehicle. *Id.* Keep Fresh Filters, Inc. obtained a default judgment against Ms. Reguli and promptly recorded a copy in the register's office. *Id.* The clerk and master issued a writ of execution directing the sheriff to take possession of the BMW, and the execution was properly levied. *Id.* Ms. Reguli then submitted a new application for certificate of title and registration, claiming that her daughter's lien on the vehicle arose on the date the vehicle was purchased. *Id.*

-9-

statutes provide the principles for fixing the priorities among competing lien claimants and secured parties.

*Id.* at 442. Article 9 of the Uniform Commercial Code applies to nearly all consensual transactions intended to create a security interest in goods by contract,[8] including transactions intended to create a security interest in automobiles. *Id.* However, Article 9 is not the only body of law governing security interests in automobiles. *Id.* Pursuant to Tennessee Code Annotated section 47-9-311, Article 9's filing requirements must give way to state statutes requiring security interests to be indicated on an automobile's certificate of title in order to be perfected. Tennessee has just such statutes, and compliance with the motor vehicle title and registration laws "is the exclusive method for perfecting a security interest in automobiles not part of inventory." *Reguli*, 888 S.W.2d at 442; *see* Tenn. Code Ann. § 55-3-126 (Supp. 2007). In sum, the motor vehicle title and registration statutes govern requirements for perfecting security interests in automobiles, but the Uniform Commercial Code still provides the rules for determining priorities when there is a dispute among persons claiming an interest in the same automobile. *Id.*

Tennessee Code Annotated section 47-9-317 provides that a security interest is subordinate to the rights of a person that becomes a lien creditor before the security interest is perfected. As in *Reguli*, this provision is dispositive of the issue before us. However, we must consider several questions in order to resolve the issue: (1) Is Mr. Ingle a lien creditor? (2) If so, when did he become a lien creditor? (3) Was Mr. Cossey's security interest unperfected when Mr. Ingle became a lien creditor?

## 1. Is Mr. Ingle a lien creditor?

***Tennessee Code Annotated section 47-9-102(a)(52) defines a "lien creditor," for our*** purposes, as "a creditor that has acquired a lien on the property involved by attachment, levy, or the like." Thus, we must determine whether Mr. Ingle is a creditor, whether he has a lien recognized by state law, and whether the lien attached to the property by attachment, levy, or the like. Mr. Ingle is clearly a creditor, specifically a judgment creditor, by virtue of his valid final judgment against Mr. and Mrs. Head.

Now we must determine whether he holds a lien recognized by state law. "A lien, in its broadest sense, is a legal claim or charge on real or personal property used as security for the payment of some debt or obligation." *Reguli*, 888 S.W.2d at 443 (citing *Shipley v. Metropolitan Life Ins. Co.*, 25 Tenn. App. 452, 454, 158 S.W.2d 739, 741 (1941)). Persons who obtain a judgment become judgment creditors and may obtain two significantly different types of liens against the judgment debtor's property. *Id.* The first type is a judgment lien, authorized by Tennessee Code Annotated section 25-5-101(b), which attaches to the judgment debtor's real property from the time a certified copy of the judgment is recorded in the register's office. The second type is an execution lien, authorized by Tennessee Code Annotated section 25-5-103, which attaches to the judgment

---

[8] Tennessee Code Annotated section 47-9-109 lists types of transactions not covered by Article 9.

debtor's personal property. The execution lien requires the registration of the judgment within sixty days after it is rendered and the issuance and levy of a writ of execution.[9] *Reguli*, 888 S.W.2d at 443. Thus, a judgment creditor's execution lien is inextricably linked to the sheriff's levy of execution. *Id.* at 444. The existence and efficacy of Mr. Ingle's execution lien depends only upon strict compliance with the statutes governing execution liens and writs of execution, and not upon any requirements of Article 9 or the motor vehicle title and registration statutes. *See id.* We have already determined that Mr. Ingle's execution lien is not invalid for the reasons alleged by Mr. and Mrs. Head.

### 2.    When did Mr. Ingle's lien arise?

"The rights of a lien creditor hinge upon identifying the precise point when its lien arises." *Reguli*, 888 S.W.2d at 444. In Tennessee, we follow the early common-law rule that an execution lien relates to the teste of the execution. *Id.* The "doctrine of relation" provides that the execution lien of a court of record relates to its teste. *Id.* "Court executions are tested the day of issuance." Tenn. Code Ann. § 26-1-109 (2000). Therefore, "[a] properly issued execution gives rise to a lien on the defendant's leviable property from the day it is issued."[10] *Reguli*, 888 S.W.2d at 444 (citing Tenn. Code Ann. § 26-1-109; *Carmack v. Nichols*, 181 Tenn. 551, 560, 181 S.W.2d 977, 980 (1944); *John Weis, Inc. v. Reed*, 22 Tenn. App. 90, 100, 118 S.W.2d 677, 683 (1938); *Stahlman v. Watson*, 39 S.W. 1055, 1059 (Tenn. Ch. App. 1897)). This rule serves the purpose of execution liens, which is "to facilitate using the judgment debtor's property to satisfy its debt to the judgment creditor." *Id.* (citing *Overton v. Perkins*, 8 Tenn. (Mart. & Yer.) 367, 374 (1828)). The sheriff is given time to carry out the court's orders and the debtor is prevented from disposing of the property after the judgment. *Id.* (citing *Edwards v. Thompson*, 85 Tenn. 720, 722, 4 S.W. 913, 913 (1887); Lonnie C. Rich, Note, *Enforcing Money Judgments in Tennessee*, 4 Mem. St. U. L. Rev. 65, 70, n.48 (1973)).

In this case, the clerk and master issued the writ of execution directing an officer to levy on the Corvette on January 30, 2006. In accordance with Tennessee Code Annotated section 26-1-109, the writ's teste date was January 30, 2006. Accordingly, Mr. Ingle's execution lien on the Corvette arose on January 30, 2006.

---

[9] "A writ of execution is now the customary vehicle for enforcing money judgments." *Reguli*, 888 S.W.2d at 443 (citing Tenn. Code Ann. § 26-1-103; Henry R. Gibson, *Gibson's Suits in Chancery* § 307 (William H. Inman ed., 7th ed. 1988); Lawrence A. Pivnick, *Tennessee Circuit Court Practice* § 29-1 (3d ed. 1991)). The writ of execution is simply an order directing the sheriff to levy upon and sell the judgment debtor's property identified in the writ that is not statutorily exempt. *Id.* (citing Tenn. Code Ann. § 26-1-104). "A levy of execution is the officer's act of appropriating or singling out the debtor's property for the satisfaction of a debt." *Id.* (citing *McMillan v. Gaylor*, 35 S.W. 453, 454-55 (Tenn. Ch. App. 1895)). A levy is accomplished by the officer's asserting dominion over the property, either by taking possession or doing something that amounts to the same thing. *Id.* (citations omitted). A levy results in the actual divestiture of the judgment debtor's title, the property being placed in the custody of the law, and the sheriff acquiring a special interest in the property. *Id.* at 444 (citations omitted).

[10] This rule does not apply to executions issued by general sessions courts or to writs of attachment, which do not give rise to liens until the sheriff actually levies on the property. *Reguli*, 888 S.W.2d at 444, n.3.

### 3.    Was Mr. Cossey's security interest perfected on January 30, 2006?

As previously discussed, compliance with Tennessee's motor vehicle title and registration statutes is the exclusive means for perfecting a security interest in automobiles that are not part of a dealer's inventory. *See* Tenn. Code Ann. § 55-3-126 (Supp. 2007). Tennessee Code Annotated section 55-3-126 provides, in relevant part:

> (a) . . . a lien or security interest in a vehicle of the type for which a certificate is required shall be perfected and shall be valid against subsequent creditors of the owner, subsequent transferees, and the holders of security interest and liens on the vehicle by compliance with this chapter.
>
> (b)(1) A security interest or lien is perfected by delivery to the department or the county clerk of the existing certificate of title, if any, title extension form, or manufacturer's statement of origin *and an application for a certificate of title containing the name and address of the holder of a security interest or lien* with vehicle description and the required fee.
> (2) The security interest is perfected as of the date of delivery to the county clerk or the division of motor vehicles.

(emphasis added). Mr. Head's first application for certificate of title and registration, submitted on December 2, 2005, certified that there were no liens on the vehicle. It was not until March 2, 2006, that Mr. Head submitted his second application for certificate of title designating Mr. Cossey as a lienholder. A certificate of title was issued on March 9, 2006, with a notation of Mr. Cossey's lien. Thus, on January 30, 2006, when Mr. Ingle's lien of execution arose, Mr. Cossey's security interest in the Corvette was unperfected. Tennessee Code Annotated section 47-9-317 provides that a security interest is subordinate to the rights of a person that becomes a lien creditor before the security interest is perfected. Therefore, Mr. Cossey's unperfected security interest was subordinate to Mr. Ingle's valid execution lien.[11]

### D.    *Stay of Execution*

Finally, Mr. and Mrs. Head contend that the trial court erred in not issuing a stay on the sale of the vehicle. As previously discussed, Mr. and Mrs. Head filed a "Motion for Emergency Injunctive Relief" in this Court, which we interpreted as a motion for review of the trial court's order denying a stay or injunction pending appeal, pursuant to Rule 7 of the Tennessee Rules of Appellate Procedure. We denied the motion and declined to stay execution of the trial court's judgment. We

---

[11] We express no opinion as to the validity of Mr. Cossey's underlying security interest. We only hold that, to the extent that Mr. Cossey holds a valid security interest in the Corvette, it was unperfected on the date that Mr. Ingle's execution lien arose, and therefore subordinate to Mr. Ingle's lien.

considered the Heads' arguments regarding this issue when reviewing their motion, and we decline to address the issue  further in this opinion.

## V.   CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court.  Costs of this appeal are taxed to the appellants, Christopher and Bernadine Head, and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.